Argued June 3, affirmed October 16, 1975

HUFFAKER, *Appellant, v.* BAILEY ET AL,
*Respondents.*

540 P2d 1398

*John L. Hilts* of Van Dyke, DuBay, Robertson, Paulson & Hilts, P. C., Medford, argued the cause and filed briefs for appellant.

*Steven A. Zamsky* of Giacomini, Jones & Zamsky, P. C., Klamath Falls, argued the cause and filed a brief for respondents.

Before O'CONNELL, Chief Justice, McALLISTER, DENECKE, HOLMAN, HOWELL, and BRYSON, Justices.

HOLMAN, J.

Petitioner, a physician, filed a petition with the Circuit Court of Klamath County for an alternative writ of mandamus to compel the Board of Directors of the Presbyterian Intercommunity Hospital to grant him medical staff privileges at the hospital. Respondents' demurrer to the alternative writ was sustained.

The first count of the writ alleged that petitioner is a medical doctor specializing in internal medicine and is licensed to practice in Oregon; that he applied for appointment to the staff of the hospital to practice his specialty, and, pursuant to the hospital bylaws, he documented his ability to work with others

and to give his patients a high quality of medical care, and submitted the documents to the hospital (such documents were incorporated in the writ as exhibits); that his application was rejected by the hospital on the basis that petitioner had failed to document with sufficient adequacy:

(1) his ability to work with others in order to assure that his patients would be given a high quality of medical care; and

(2) his competence in relation to the privileges requested.

The writ further alleged that the denial of his application was not for existing cause and was arbitrary and capricious.

The second count of the writ states that the by-laws of the hospital impose standards for staff membership which require the applicant to be able to give "a high quality of medical care" and, therefore, are vague and ambiguous and provide a basis for arbitrary application.

Petitioner contends that the decisions of the hospital's governing board are subject to judicial review and that mandamus is a proper method of review. Respondents strenuously argue that as a "private" hospital the board's action is immune from judicial scrutiny and that, in any event, mandamus is inappropriate to review its exercise of discretion. In view of our conclusion that petitioner cannot prevail even assuming the case is properly before us, we find it unnecessary to decide these interesting questions. Therefore, we assume, but do not decide, that the hospital's decisions are subject to review by mandamus in this case, and proceed to our consideration of petitioner's other assignments of error.

Petitioner contends that the provisions of the hos-

pital bylaws under which he was excluded are impermissibly vague. The bylaws in question state:

"Only physicians and dentists licensed to practice in the State of Oregon, who can document their background, experience, training and demonstrated competence, their adherence to the ethics of their profession, their good reputation, and their *ability to work with others,* with sufficient adequacy to assure the medical staff and the governing body that any patient treated by them in the hospital will be given *a high quality of medical care,* shall be qualified for membership on the medical staff * * *." (Emphasis ours.)

The following courts have taken the view that general standards such as "a high quality of medical care" are acceptable. *Sosa v. Board of Managers of Val Verde Memorial Hospital,* 437 F2d 173, 176 (5th Cir 1971); *Edson v. Griffin Hospital,* 21 Conn Sup 55, 144 A2d 341 (1958); *North Broward Hospital District v. Mizell,* 148 So 2d 1, 4-5 (Fla 1962). A series of California cases, however, holds that such general standards in hospitals' criteria are too vague and therefore invalid. *Rosner v: Eden Township Hospital District,* 58 Cal 2d 592, 25 Cal Rptr 551, 375 P2d 431 (1962); *Martino v. Concord Community Hospital District,* 233 Cal App 2d 51, 43 Cal Rptr 255 (1965); *Wyatt v. Tahoe Forest Hospital District,* 174 Cal App 2d 709, 345 P2d 93 (1959).

██ Once it is accepted that a hospital may set higher standards of care for hospital staff admissions than the mere possession of a state license it becomes difficult to conceive of ways of setting out in greater detail the higher degree of medical care desired. Fruitless elaborations may be indulged in without further specificity. Rather than curtailing the discretion at the outset for failure to define that which would be difficult to define in any event, the court should more ap-

propriately look to the exercise of the discretion to see if it has been abused. As the court stated in *Sosa v. Board of Managers of Val Verde Memorial Hospital, supra* at 176-77:

"* * * Admittedly, standards such as 'character qualifications and standing' are very general, but this court recognizes that in the area of personal fitness for medical staff privileges precise standards are difficult if not impossible to articulate. * * * The subjectives of selection simply cannot be minutely codified. The governing board of a hospital must therefore be given great latitude in prescribing the necessary qualifications for potential applicants * * *.

"* * * * *

"* * * In short, so long as staff selections are administered with fairness, geared by a rationale compatible with hospital responsibility, and unencumbered with irrelevant considerations, a court should not interfere. Courts must not attempt to take on the escutcheon of Caduceus."

The foregoing statement would appear to represent the more sound view.

Petitioner also apparently contends, though not with crystal clarity, that the criterion of documented ability to work well with others is not a valid consideration because it has no bearing on petitioner's *medical* competence and is not related to the quality of patient care.

This contention has some merit, and raises a rather sensitive issue. The issue of a pleasant and cooperative personality has no direct influence on medical competence in a technical sense. But it must be remembered that the hospital is concerned not only with medical competence, but primarily with the *quality of care* the patients receive in the hospital. Petitioner cites *Rosner v. Eden Township Hospital District,* su-

pra, for the proposition that temperamental suitability for cooperative staff hospital work is not a proper consideration relating to effective patient care. A California statute, however, provided that staff membership in public hospitals was restricted to doctors "competent in their respective fields, worthy in character and in professional ethics." The California Supreme Court construed this statute as delineating the *exclusive* criteria for public hospital staff membership, and held that under the statute the additional consideration of temperamental suitability was not an authorized criterion. *Rosner,* therefore, does not provide direct support for petitioner's argument.[1]

Most other courts have found that the factor of ability to work smoothly with others is reasonably related to the hospital's object of ensuring patient welfare.[2] This conclusion seems justified for, in the modern hospital, staff members are frequently required to work together or in teams, and a member who, because of personality or otherwise, is incapable of getting along, could severely hinder the effective treatment of patients.[3] As stated in *Silver v. Castle Memorial*

---

[1] Rosner v. Eden Township Hospital District, 58 Cal 2d 592, 25 Cal Rptr 551, 375 P2d 431 (1962) is criticized for this holding in Comment, *Hospital Staff Privileges: The Need for Legislation,* 17 Stan L Rev 900, 914-17 (1965). For example, "[I]t is difficult to understand how a hospital is to adhere to modern concepts of hospital administration if it cannot consider the ability of its staff members to cooperate * * *." *Id.* at 916.

[2] *See, e.g.,* Shulman v. Washington Hospital Center, 222 F Supp 59, 64 (D DC 1963); Silver v. Castle Memorial Hospital, 53 Hawaii 475, 497 P2d 564, 568, *cert denied,* 409 US 1048, 93 S Ct 517, 34 L Ed2d 500 (1972); Bricker v. Sceva Speare Memorial Hospital, 111 NH 276, 281 A2d 589, 593, *cert. denied,* 404 US 995, 92 S Ct 535, 30 L Ed2d 547 (1971); Sussman v. Overlook Hospital Ass'n, 95 NJ Super 418, 231 A2d 389, 393 (1967); Hagan v. Osteopathic General Hospital of R.I., 102 RI 717, 232 A2d 596, 601 (1967).

[3] *See,* Comment, *Hospital Staff Privileges: The Need for Legislation,* 17 Stan L Rev 900, 914-17 (1965).

*Hospital,* 53 Hawaii 475, 497 P2d 564, 568, *cert denied,* 409 US 1048, 93 S Ct 517, 34 L Ed2d 500 (1972), "[T]he absence of a compatible team working together could impair the doctor's performance and consequently undermine the effectiveness of the treatment given the patient." Hospitals uniformly consider cooperativeness an important factor, and in these circumstances it seems questionable whether this court should gainsay the hospitals' experience and judgment in this matter.

■ Although there are cases to the contrary, it appears that the better view in both logic and the case law is that "a high quality of medical care" is not an impermissibly vague standard and that the applicant's ability to work with others is a legitimate consideration reasonably related to the quality of patient care.

Petitioner next contends that, even if the bylaw is valid, the board acted arbitrarily in finding that petitioner had failed to document adequately his ability to work with others.

One of the documents incorporated as an exhibit within the first count of the writ was a letter from a doctor under whom petitioner had trained which contained the following:

"Specifically at his request, I can confirm that Dr. Huffaker was not asked directly or by implication to leave the Tucson Hospitals Medical Education Program. However, I can state that his decision to depart was not marked by any great manifestation of regret.

"I cannot confirm that his performance was not criticized by me or by others. While at the Tucson Hospitals Medical Education Program, I encouraged direct criticism from assigned attendings and I know as a fact that this was done by them on several occasions in addition to my own discussions with Dr. Huffaker.

"The areas of criticism were in motivation, initiative and interpersonal relationships with attending physicians, his own peer group and hospital personnel.

"I considered him to be clinically competent at his stage of training at that time and I had no question about his ethical or moral character. At that time I would have recommended him to the Tucson Community Hospitals as a competent physician but with no great enthusiasm because of his personality.

"I can recommend him to you for staff privileges as well. Of course, I have not seen or heard of Dr. Huffaker since June, 1970, and it may well be that this three year period may have resulted in further maturation and subsequent changes in attitudes. I would suggest that you give greater weight and credence to letters from people who have worked with him more recently."

■ While three of the four[4] responses to the inquiries addressed to persons with whom petitioner had trained were favorable to the petitioner, it is obvious from the material in the letter heretofore quoted that there was a basis for a doubt that petitioner was able to work well with others. There being such a basis for doubt, we are in no position to overrule the decision of the board, because the decision was not arbitrary or capricious.

■ The possibility that this court might have made a decision contrary to that of the board is no basis for changing the result. There is something to be said for a policy of judicial restraint despite the fact that one sees so little of it. The board had the responsibility, and the discretion, to assess petitioner's qualifications in the first instance. As long as the denial was made in good faith and supported by an adequate factual

[4] There was a fifth letter which was also unfavorable, but it was written by a person who had no personal knowledge but was merely reporting the records made by the author of the letter quoted in the text.

basis, we are not disposed to invalidate it. The following language from *Shulman v. Washington Hospital Center*, 222 F Supp 59, 64 (D DC 1963), is appropriate, though it was used in deciding that a private hospital's choices in such matters were not subject to judicial review in any event:

"There are sound reasons that lead the courts not to interfere in these matters. Judicial tribunals are not equipped to review the action of hospital authorities in selecting or refusing to appoint members of medical staffs, declining to renew appointments previously made, or excluding physicians or surgeons from hospital facilities. The authorities of a hospital necessarily and naturally endeavor to their utmost to serve in the best possible manner the sick and the afflicted who knock at their door. Not all professional men, be they physicians, lawyers, or members of other professions, are of identical ability, competence, or experience, or of equal reliability, character, and standards of ethics. The mere fact that a person is admitted or licensed to practice his profession does not justify any inference beyond the conclusion that he has met the minimum requirements and possesses the minimum qualifications for that purpose. Necessarily hospitals endeavor to secure the most competent and experienced staff for their patients. Without regard to the absence of any legal liability, the hospital in admitting a physician or surgeon to its facilities extends a moral imprimatur to him in the eyes of the public. Moreover not all professional men have a personality that enables them to work in harmony with others, and to inspire confidence in their fellows and in patients. These factors are of importance and here, too, there is room for selection. In matters such as these the courts are not in a position to substitute their judgment for that of professional groups."

■ An additional reason for allowing hospitals, even though they are public hospitals, a wide range of dis-

cretion is the possibility of independent tort liability being imposed upon them for the actions of doctors practicing therein,[5] including liability for the mere selection and admission of physicians whose subsequent negligence injures a hospital's patients.[6] In such circumstances a hospital must necessarily be vested with considerable discretion in staff matters.[7]

It is this court's conclusion that the writ demonstrates an adequate basis for an exercise of the hospital board's discretion in refusing petitioner staff privileges, assuming, but not deciding, that sufficient facts appear in the writ from which it should be concluded that the hospital had sufficient public character to make its decisions subject to court review in a proper case.

The judgment of the trial court is affirmed.

[5] See, generally, Southwick, The Hospital as an Institution—Expanding Responsibilities Change its Relationship with the Staff Physician, 9 Calif West L Rev 429 (1973); Comment, The Hospital-Physician Relationship: Hospital Responsibility for Malpractice of Physicians, 50 Wash L Rev 385 (1975).

[6] See Purcell v. Zimbleman, 18 Ariz App 75, 500 P2d 335, 341 (1972); Mitchell County Hospital Authority v. Joiner, 299 Ga 140, 189 SE 2d 412, 414, 51 ALR 3d 976 (1972); Darling v. Charleston Memorial Hospital, 33 Ill 2d 326, 211 NE 2d 253, 261, 14 ALR 3d 860 (1965), cert denied, 383 US 946, 86 S Ct 1204, 16 L Ed2d 209 (1966).

[7] Mauer v. Highland Park Hospital Foundation, 90 Ill App 2d 409, 232 NE 2d 776, 779 (1967).