Argued and submitted February 6, affirmed September 18, petition for rehearing denied November 20, 1979

STRAUBE,
*Appellant,*

*v.*

EMANUEL LUTHERAN CHARITY
BOARD,
*Respondent.*

(No. 402-226 SC 25276)

600 P2d 381

[376]

Richard E. Alexander, of Davies, Biggs, Strayer, Stoel & Boley, Portland, argued the cause for appellant. With him on the briefs was Preston C. Hiefield, Jr., of Williams, Stark, Hiefield, Norville & Griffin, P. C., Portland.

William L. Hallmark, Portland, argued the cause and filed a brief for respondent. With him on the brief were William A. Masters, and Jones, Lang, Klein, Wolf & Smith, Portland.

William P. Isele, Chicago, Illinois, filed a brief amicus curiae for the American Medical Association.

HOLMAN, J.

## HOLMAN, J.

Plaintiff, a radiologist, brought this suit against defendant hospital for wrongful suspension of his staff privileges. He sought an order restoring them and enjoining the hospital from proceeding against him in the future unless it did so in compliance with due process and with its bylaws. Plaintiff also sought compensatory and punitive damages, attorney fees, and costs. Defendant moved for summary judgment which was partially granted on the due process issues. After trial on the remaining issues, the court concluded that defendant had complied with its bylaws and that there was a basis in fact for defendant's temporary and permanent suspensions of plaintiff's staff privileges. Plaintiff appealed from both the granting of the partial summary judgment and the final decree.[1]

It is not disputed that plaintiff is an excellent radiologist. Defendant suspended him for his inability to work with others at the hospital, an inability that assertedly interfered with adequate patient care. Plaintiff started working as a radiologist in 1963 at the Lloyd Center X-ray, a partnership that had an exclusive agreement with defendant to provide its radiology services. Plaintiff was temporarily suspended by the president of defendant. Pursuant to defendant's bylaws, plaintiff requested and got a hearing before the Medical Staff Executive Committee (executive committee) of defendant. The executive committee found that plaintiff was, in fact, a disruptive influence, and continued his suspension until a later date, when the executive committee would hear further evidence to see whether plaintiff had resolved his problems in his relationship with others; if so,

---

[1] Plaintiff also instituted an action against four individuals, claiming they tortiously interferred with his business relationship with defendant hospital. He also lost that case at the trial level and appealed. The appeal in that case was argued at the same time as the appeal in this case. *See Straube v. Larson,* 287 Or 357, 600 P2d 371 (1979), decided this day.

defendant would restore plaintiff's privileges on a probationary basis.

Plaintiff appealed this decision to the Review Committee (review committee) as provided by the bylaws. That committee conducted another hearing and found that although plaintiff's behavior had perhaps been disruptive, it was not so disruptive as to harm the patients. Therefore, it recommended that plaintiff be reinstated for a one-year probationary period.

Pursuant to the bylaws, the review committee reported its conclusions back to the executive committee which rejected the review committee's conclusions and reaffirmed plaintiff's suspension. The executive committee asked plaintiff to appear before it within 30 days to offer testimony to show that he intended to work harmoniously. If he did so, it would reinstate him on a probationary basis. They warned him that if he did not so respond he would be permanently suspended.

Plaintiff did not respond and was permanently suspended. He appealed his suspension to the hospital Board of Directors (board). It concluded that plaintiff's disruptive behavior impaired the function of the radiology department which, in turn, was "inconsistent with the best interest of patients' care." It therefore affirmed the permanent suspension. Thereafter, a joint conference committee of the hospital voted unanimously to approve the board's action. The board reaffirmed its position in a subsequent meeting. Three months later plaintiff filed this suit.

Plaintiff's due process argument is:

> "The actions of private, non-profit hospitals are so effected [sic] and intertwined with the public nature of a hospital that such hospital must afford physicians some element of due process of law."

He identifies the following sources of this due process right: common law, Article 1, section 10, of the Oregon Constitution, and the Fourteenth Amendment of the

United States Constitution,[2] each of which will be considered in turn.

The term "common law due process" is unfortunate because of the tendency to confuse it with Fourteenth Amendment due process; "fair procedure" is a better term. In those states which recognize it, it is a rule having both substantive and procedural aspects which controls the actions of some private entities.[3] In *Pinsker v. Pacific Coast Soc. of Orthodontists,* 1 Cal 3d 160, 81 Cal Rptr 623, 460 P2d 495 (1969), for example, California adopted a common law requirement of "fair procedure" for private orthodontic associations, even though membership in such organizations was not necessary to practice orthodontics, because membership in the associations was "a practical necessity for a dentist who wishes not only to make a good living as an orthodontist but also to realize maximum potential achievement and recognition in such specialty." 460 P2d at 499. The follow-up case, *Pinsker v. Pacific Coast Soc. of Orthodontists,* 12 Cal 3d 541, 116 Cal Rptr 245, 526 P2d 253 (1974), holds that arbitrary conduct by an organization such as the Society of Orthodontists is forbidden by the common law, and that "an organization's decision to expel or exclude an individual may be arbitrary either because the reason underlying the rejection is irrational or because the organization has proceeded in an unfair manner." 526 P2d at 259.

Plaintiff contends there is a duty of fair procedure placed upon defendant in suspending his hospital privileges because those privileges are very important to plaintiff in pursuing his career and that the trial

---

[2] Plaintiff makes the common error of asserting that all these "due process" provisions are violated at once, whereas, in fact, if the common law gives him the rights he seeks, the constitutions are not violated, and if the state constitution gives him those rights, the federal constitution is not violated. *See* Linde, *Without "Due Process"—Unconstitutional Law in Oregon,* 49 Or L Rev 125, 133-35 (1970).

[3] *E.g., Ascherman v. San Francisco Medical Society,* 39 Cal App 3d 623, 114 Cal Rptr 681 (1974); *Falcone v. Middlesex Co. Medical Soc.,* 34 NJ 582, 170 A2d 791 (1961).

court erred in granting the partial summary judgment. He states that the cases which recognize such a right require "a hearing, timely notification sufficiently prior to the hearing to allow adequate preparation of defense, a written statement of the charges against the individual, and the right to call his own witnesses before the committee." This court has never decided whether there is such a duty in Oregon, and it is unnecessary to do so in this case because, if such duty exists, it was complied with in this case. *Compare Huffaker v. Bailey,* 273 Or 273, 540 P2d 1398 (1975).[4]

Plaintiff points out all sorts of procedural shortcomings in the hearings he was afforded by the hospital staff which would be more appropriate had they been addressed to a court proceeding. This was a proceeding conducted by non-legally trained persons and there is no necessity that it be conducted with the preciseness of a trial at law or equity in order to be procedurally fair. The executive committee hearing the matter was composed of approximately 20 physicians, many of whom chose to question witnesses despite the presence of attorneys representing both plaintiff and the hospital. Plaintiff contends he was not permitted to show bias and prejudice of witnesses. In fact he was allowed the usual means, which is cross-examination. He contends he was not given a concise statement of the charges against him. He was given information of specific circumstances that occurred in connection

---

[4] Subsequent to the proceedings before the hospital committees and boards, the legislature enacted ORS 441.055(3)(c), which provides:

"(3) The governing body of each health care facility shall be responsible for the operation of the facility, the selection of the medical staff and the quality of care rendered in the facility. The governing body shall:

"* * * * *.

"(c) Insure that procedures for granting, restricting and terminating privileges exist and that such procedures are regularly reviewed to assure their conformity to applicable law * * *."

Or Laws 1977, ch 448, § 10, and ch 751, § 23a.

with the making of particular hospital records from which records he could have determined all necessary information. He secured as much or more information about the charges than he would have received from the average criminal indictment. He made no request for the relevant hospital records but proceeded to hearing.

Plaintiff contends he did not have an opportunity to call witnesses because defendant did not require the attendance of the witnesses he wished to examine. Defendant did not have subpoena power and, of course, could not require anyone's attendance. There is evidence that persons whom plaintiff requested to appear asked representatives of defendant whether they had to appear and were told, truthfully, they did not have to; but there is no evidence that defendant discouraged or dissuaded anyone who was so inclined from appearing and testifying. In fact, some persons did appear and testify in plaintiff's behalf.

■ Plaintiff complains that the committees before which the hearings were held were not impartial and that they considered information outside of the record. There was testimony that when the approximately 20-person executive committee deliberated after the hearings, as is usual with a jury, some things were discussed which were not relevant to the record and to the problem at hand. This situation was aggravated in that the difficulty between plaintiff and the other staff physicians and employees was of long standing and that many of the members of the committees and boards which sat in judgment were aware that things in the particular department in which plaintiff worked had not been all sweetness and light. However, we agree with the trial judge that plaintiff did not carry the burden of proving that the members prejudged the charges against him or that the proceeding was basically unfair.

■■ Plaintiff charges that the bylaws and regulations for summary suspension were vague and overbroad

[381]

and were not followed. "Vagueness" is a fatal fault specifically in criminal law. *Compare State v. Hodges,* 254 Or 21, 457 P2d 491 (1969) *with Anderson v. Peden,* 284 Or 313, 324, 587 P2d 59 (1978). It is our conclusion that the bylaws were substantially complied with and that the standard, "in the best interests of patient care," is as definite as was practical. In *Huffaker v. Bailey, supra,* 273 Or at 276-77, we held that "a high quality of medical care" was not impermissibly vague.

■ Plaintiff contends that he was given no opportunity by the bylaws or in fact to be heard in advance of the summary suspension order. It is true the bylaws do not provide for any such hearing nor was he given one. Assuming that plaintiff is entitled to "fair procedure" under a common law theory, we cannot say that he is entitled to a pre-suspension hearing when the best interest of the patients may indicate to the contrary. In addition, the extent of the hearings to which he was entitled in order to receive fair treatment is related to that which he could reasonably expect when he entered into his relationship with the hospital. Fair procedure in a common law sense is not constitutional due process. When plaintiff joined defendant's medical staff he signified "his agreement to abide by these [the hospital's] bylaws and regulations" and they provided for immediate suspension if required by "the best interests of patient care in the hospital."

■ Plaintiff cites Article I, section 10, of the Oregon Constitution. It states:

"No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

Of course, if defendant's discharge of plaintiff did him a legal injury in his property, as he asserts, the proceedings in the trial court and in this court are precisely the remedy by due course of law to which the section entitles him. The question is not whether the

courts will afford him a remedy but whether defendant did him an injury under the law. In any event, Article I, section 10, itself does not direct the *defendant* to give him a remedy by due course of law. The section does not address a directive to private parties.

■ Plaintiff claims that the hospital is suffiently involved with the state to owe him "due process of law" under the Fourteenth Amendment of the United States Constitution.[5] He argues that "state action" is involved here because of "federal funding, charitable solicitation from the general public, federal tax exempt status, and vital service to the general public." However, he cites no authority that this is sufficient to constitute state action for the purpose of constitutional due process. In *Jackson v. Metropolitan Edison Co.,* 419 US 345, 95 S Ct 449, 42 L Ed 2d 477 (1974), the Court held that the action of a public utility in terminating service to a customer was not state action despite its regulation and its performance of an essential public service in which it possessed at least a partial monopoly. The action was not taken in the exercise of a power "which is traditionally associated with sovereignity." The performance of hospital services is not usually so associated.

■ For his next assignment of error plaintiff contends the trial court erred "in refusing to grant plaintiff a *de novo* review of the decision suspending plaintiff's staff privileges." Defendant contends that plaintiff is not entitled to judicial review at all. We have assumed (but not decided) for the purpose of this case that plaintiff is entitled to "fair procedure" as a common law right. This could only be assured of by some sort of court review.

The bylaws in this case say nothing about judicial review *per se.* They do, however, provide for review by

---

[5]   "* * * nor shall any State deprive any person of life, liberty, or property, without due process of law * * *."

various hospital committees to be conducted as follows:

> "The representative of the Board of Directors or Executive Committee shall have the obligation to introduce evidence in support of its action or recommendations, but the applicant or member of the medical staff for whom the hearing has been convened shall thereafter be required to bear the burden of proving that the action or recommendation in question was arbitrary or unreasonable."

There is nothing about the statute, the bylaws, or common sense which indicates that a court at either the trial or appellate level should decide the merits of plaintiff's dismissal. It would be unwise for a court to do more than to make sure that some sort of reasonable procedure was afforded and that there was evidence from which it could be found that plaintiff's conduct posed a threat to patient care. Courts are not knowledgeable about hospital operations or patient care. The bylaws to which plaintiff agreed when he accepted staff privileges provide for the decision to be made by persons with training in those fields, and there is no reason for upsetting their decision so long as there was a rationale therefor. *Compare Huffaker v. Bailey, supra* at 280-81 (applying a "good faith and adequate factual basis" scope of review in a case where a hospital denied a doctor's application for admission to the staff).

██ ██Plaintiff's next assignment of error contends that there was no evidence upon which the trial court could find that the hospital acted for cause and in good faith. We disagree. A physician's inability to work with others which jeopardizes patient care is good cause for terminating his staff privileges. *Compare Huffaker v. Bailey, supra,* 273 Or at 277-79, which holds that a physician's application for staff admission may be denied for inability to work with others. The facts show an adequate basis for defendant to conclude that plaintiff *was* unable to work with others and that this inability *did* jeopardize patient care. Nothing is to be

gained by reciting the voluminous evidence upon the subject.

Plaintiff charges as error the trial court's finding that defendant followed its bylaws in connection with the summary and permanent suspension of plaintiff's staff privileges. In this regard plaintiff alleges a failure (1) to notify him in concise language of the grounds for the Executive Committee action; (2) to provide him with a review committee whose members did not actively participate at the Executive Committee level; (3) to provide him with a reasonable opportunity to be heard and to present evidence; and (4) to provide him the right ·to call, examine and cross-examine witnesses. With the exception of No. (2) above these are the same kind of deficiencies in procedure which he claimed deprived him of "fair procedure" as a common law right and which we discussed in deciding that issue. Since we have already determined that defendant did meet these procedural requirements, it is unnecessary to discuss them further. With regard to the claim that plaintiff was not provided with a review committee whose members did not actively participate at the executive committee level, plaintiff admits that the review committee did not include any person who sat on both committees. However, he objects to the review committee's reviewing the transcript of the executive committee as well as to its taking testimony. It would seem reasonable that such should be the functions of a review committee, and plaintiff points to nothing in the bylaws which indicates they should not.

The decree of the trial court is affirmed.