# STRAUBE,
*Appellant,*

*v.*

# LARSON et al,
*Respondents.*

## (402-227; CA A29459)

699 P2d 206

Richard E. Alexander, Portland, argued the cause for appellant. With him on the briefs were Charles F. Adams, and John M. Volkman, Portland.

William L. Hallmark, Portland, argued the cause for

respondents. With him on the brief was Hallmark, Griffith & Keating, P.C., Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

**ROSSMAN, J.**

Plaintiff, a medical doctor and radiologist, appeals from a summary judgment for defendants[1] in this action for damages for wrongful interference with his business relationships. He alleges that defendants, one of whom was the chief administrator of Emanuel Hospital (Larson) and the other a resident training in radiology at the hospital (Seapy), successfully conspired to deprive him of hospital staff privileges. He alleges that he was temporarily suspended by Larson in 1973 pursuant to this conspiracy and that for the next year, while the propriety of a permanent suspension was under review by the hospital, defendants spread unfounded information about him in order to continue the temporary suspension. He alleges that, as a result of defendants' conduct, his staff privileges were permanently suspended by the hospital, and that defendants acted maliciously for the purpose of injuring and destroying him in his profession. The trial court concluded that every substantial question of fact material to plaintiff's claim had been fully litigated or ruled on in prior proceedings, and that defendants were entitled to judgment as a matter of law. We reverse.

This is not the first time this case has been appealed. In *Straube v. Larson,* 287 Or 357, 600 P2d 371 (1979), plaintiff made the same allegations against Larson, Seapy and two other defendants connected with the hospital. The Supreme Court reversed, in part, a summary judgment for all of the defendants in the case, because it found evidence sufficient to raise a jury question concerning what Larson and Seapy had done and why:

> "[A] jury could find that Seapy's complaints were a cause of Larson's summary suspension of plaintiff, that they were motivated by a desire to 'get even' with plaintiff * * *.
>
> "* * * * *
>
> "[T]he jury could find that Larson lied about one of the principal reasons he gave for summarily suspending plaintiff and could infer therefrom that he had an improper purpose or he would not have lied concerning it." 287 Or at 368.

The court continued:

---

[1] Janet Larson is the personal representative of, and successor in interest to, defendant Larson, who is now deceased.

"Both Larson and Seapy contend that plaintiff's evidence does not overcome their defense of justification or privilege * * *.

"* * * * *

"The issue is whether the evidence demonstrates that the actions of Larson and Seapy were taken for the benefit of the hospital or whether they were taken to satisfy private grudges. We submit that the evidence previously discussed creates a question of fact on this issue * * *." 287 Or at 369-70.

The court also set forth the elements of a *prima facie* case for wrongful interference with business relationships: (1) intentional interference, (2) a duty of non-interference and (3) damages. Breach of the duty of noninterference may be shown by proving that a defendant "interfered for an improper purpose rather than for a legitimate one, or that defendant used improper means which resulted in injury to plaintiff." 287 Or at 361. The case was remanded for trial as to Larson and Seapy.

Plaintiff had also filed an action against the hospital, alleging that the hospital's suspension procedures denied him due process and that the suspension decisions lacked a basis in fact. But in *Straube v. Emanuel Lutheran Charity Board,* 287 Or 375, 600 P2d 381 (1979), the Supreme Court affirmed a partial summary judgment for the hospital on the due process issues and affirmed a final decree in favor of the hospital, entered after trial, on the remaining issues. The opinion states:

"Plaintiff's next assignment of error is that there was no evidence upon which the trial court could find that the hospital acted for cause and in good faith. We disagree. A physician's inability to work with others which jeopardizes patient care is good cause for terminating his staff privileges. * * * The facts show an adequate basis for defendant to conclude that plaintiff *was* unable to work with others and that this inability *did* jeopardize patient care." 287 Or at 384. (Emphasis in original.)

The principal question presented by this appeal is whether plaintiff is collaterally estopped by *Straube v. Emanuel Lutheran Charity Board, supra,* from attempting to prove that Larson and Seapy wrongfully conspired to continue plaintiff's temporary suspension and to interfere with his business relationships. Defendants suggested that an estoppel

occurred the first time that this case was appealed, but the Supreme Court noted that the claim was premature:

"The other case upon which the claim of an estoppel is based did not occur until after the summary judgments in this case were granted at the trial level and therefore cannot be considered here." *Straube v. Larson, supra,* 287 Or at 373.

On remand, defendants added to the existing record the record and rulings in *Straube v. Emanuel Lutheran Charity Board, supra,* and now renew their claim of collateral estoppel. Defendants also invite us to adopt the rationale of *Westlake Comm. Hosp. v. Superior Ct. of L. A. County,* 17 Cal3d 465, 131 Cal Rptr 90, 551 P2d 410 (1976), and hold that plaintiff may not bring an action for damages unless he first succeeds in having the hospital's decision to suspend permanently his staff privileges set aside. *Westlake* was decided three years before the Supreme Court issued an opinion in this case setting forth the elements plaintiff had to prove to establish his claim. *Westlake's* requirement was not among those elements. Under the circumstances, we conclude that it would be inappropriate for us to impose that requirement in this case.

■ Collateral estoppel prevents the relitigation of an issue if the party against whom it is asserted has had a full and fair opportunity in a previous proceeding to litigate the issue and it is not unfair to apply the doctrine. *State Farm v. Century Home,* 275 Or 97, 103, 550 P2d 1185 (1976).

■ ■ The relevant issue in the present proceeding is whether defendants conspired to continue plaintiff's temporary suspension and to interfere with plaintiff's business relationships for an improper purpose. Plaintiff contends that this issue is not identical to any issue litigated in *Straube v. Emanuel Lutheran Charity Board, supra,* because the issue in the suit against the hospital was whether the *hospital's* suspension decisions were wrongful. Plaintiff is partly correct, but our review of the record convinces us that the question of defendant Larson's motive in temporarily suspending plaintiff was fully litigated and decided adversely to plaintiff at every stage of the action against the hospital.[2] We are also

---

[2] For example, plaintiff's third assignment of error in its petition for review of *Straube v. Emanuel Lutheran Charity Board, supra,* was:

"The trial court erred in finding that defendant operated in good faith and with cause in summarily and permanently suspending plaintiff's staff privileges."

persuaded that the conclusion reached by the trial court—that the action taken by Larson in temporarily suspending plaintiff "was taken in good faith"—was necessary to the judgment for the hospital in that case. Plaintiff alleged that he was denied due process by the hospital in connection with both the temporary and permanent suspensions. Under the rule of *Huffaker v. Bailey,* 273 Or 273, 540 P2d 1398 (1975), due process is satisfied in this context if the procedure afforded is fundamentally fair *and the action is taken in good faith.*[3] Without a finding that the temporary suspension was imposed in good faith, the defendant hospital would not have been entitled to prevail in *Straube v. Emanuel Lutheran Charity Board, supra.*

If the only issue in the present case were the good faith of Larson in imposing the summary suspension on plaintiff, plaintiff would be collaterally estopped from litigating that issue. Plaintiff's complaint alleges:

"IV

"That on or about June 1972, decedent Larson and the defendant, Robert Seapy, M.D., entered into a conspiracy with one another for the purpose of injuring plaintiff and that pursuant to said conspiracy decedent Larson, on or about January 30, 1973, wrongfully and summarily suspended plaintiff's staff privileges from Emanuel Hospital."

It is these factual allegations that we conclude were decided in *Straube v. Emanuel Lutheran Charity Board, supra.* The hospital's liability for Larson's summary suspension of plaintiff was vicarious. Unless Larson acted in good faith, the hospital would have been liable. If there was a conspiracy between Larson and Seapy to injure plaintiff, we do not see how Larson could have acted in good faith.

Plaintiff's complaint also alleges:

"V

"From on or about January 30, 1973, up to and including January 24, 1974, defendant Seapy and decedent, and each of them, by appearing and testifying before the Executive Committee, and Review Comittee and the Board of Directors of

---

[3] Both *Huffaker v. Bailey, supra,* and *Straube v. Emanuel Lutheran Charity Board, supra,* assume that physicians are entitled to a fair procedure in this context as a matter of common law.

Emanuel, in discussing this matter with representatives thereof, and discussing it with others who, in turn, testified before the committees and discussed it with representatives thereof, continued to secure and distribute unfounded information concerning the character, reputation, qualifications and competence of plaintiff for the purpose of wrongfully continuing the suspension of plaintiff's staff privileges."

These allegations go beyond the issue of whether Larson's temporary suspension of plaintiff was in good faith. Plaintiff alleges a course of conduct by both defendants, beginning on the day of the temporary suspension and continuing for nearly a year afterwards, that was intended to injure plaintiff and wrongfully to continue his suspension. Our review of the record fails to disclose that those matters were litigated or decided at any stage of the proceedings. It may be that, once plaintiff was temporarily suspended, Larson and Seapy conspired to continue that suspension and to effectuate his permanent suspension. It remains to be determined whether the evidence will demonstrate that the allegations are true and, if true, what defendants' motives were for their alleged course of conduct. The Supreme Court remanded this case for trial on those two questions. *See Straube v. Larson, supra,* 287 Or at 367-69.

■ Accordingly, we conclude that plaintiff is not collaterally estopped by the decision in *Straube v. Emanuel Lutheran Charity Board, supra,* from litigating the issue of defendants' motives for participating in the continuance of his temporary suspension and interfering with his business relationships. Because disputed issues of material fact remain, defendants were not entitled to a summary judgment.

■ We now consider whether plaintiff is collaterally estopped from litigating the question of damages. Plaintiff contends that he is not estopped from litigating the damages issue, even though the trial court found in *Straube v. Emanuel Lutheran Charity Board, supra,* that plaintiff suffered no "lost income."[4] In addition to the damages alleged in his action

---

[4] The trial court found:

"[Plaintiff's] income has not in fact suffered because he has lost the Emanuel Hospital affiliation * * *. [T]he Court recognizes that plaintiff's suspension will have some adverse effect upon him. It is, however, doubtful that it will be as devastating as Dr. Straube suggests. At this point plaintiff has suffered no monetary damages. * * *"

against the hospital, plaintiff alleges here that:

"* * * (4) plaintiff's partners have instituted two suits for dissolution of his medical partnership, and (5) plaintiff has suffered great mental anguish and embarrassment and his reputation in the medical community has been damaged."

Because plaintiff alleges damages other than loss of income, collateral estoppel does not prevent him from now litigating those issues.

In *Straube v. Larson, supra,* the Supreme Court did not express an opinion on the question of plaintiff's damages. *See Straube v. Larson, supra,* 287 Or at 369 n 3. The parties have raised that question here, but it is important to note that the issue is not whether plaintiff may recover damages for the *hospital's* decision permanently to suspend his privileges. He may not. Because the hospital did no legal wrong to plaintiff, and because its decision was legitimate notwithstanding any wrongful interference by defendants, the fact that plaintiff was permanently suspended, standing alone, will not support a claim for damages for injury resulting from that suspension.

■      However, plaintiff may recover damages for pecuniary loss which is the result of defendants' wrongful acts; the fact that that loss may have been suffered after the temporary suspension was imposed is of no consequence, if the loss was the result of the wrongful acts rather than of the hospital's legitimate decision. As to any noneconomic injury alleged, plaintiff must also demonstrate that the injury is "of a kind that should have been expected as a common and predictable accompaniment of disrupting the type of relationship with which the defendant interfered." *Mooney v. Johnson Cattle,* 291 Or 709, 718, 643 P2d 1333 (1981).

■      Plaintiff's final contention is that the trial court erred in concluding that the allegation of conspiracy in paragraph four of the complaint had been finally determined by the decision in *Straube v. Larson, supra.* The Supreme Court specifically held that there was insufficient evidence of a conspiracy between these two defendants and the other two defendants who were then parties:

"The next issue is whether plaintiff made a sufficient showing of conspiracy to allow the two other defendants to be held liable for Larson's and Seapy's acts. We conclude that he did not." 287 Or at 371.

In the light of the court's conclusion that it was proper to grant summary judgments for the other two defendants on plaintiff's wrongful interference claim, we conclude that the court meant only what it said. That is, there was insufficient evidence of a conspiracy between the four defendants to hold the other two defendants responsible for the present defendants' conduct. That does not amount to a finding that there was no conspiracy between these two defendants, and defendants point to nothing in the record to support the conclusion that they are entitled to judgment as a matter of law on the conspiracy allegation.

Although we are not pleased by the prospect of giving this interminable litigation another lease on life, we conclude that it was error for the trial court to grant summary judgment for defendants.

Reversed and remanded for further proceedings not inconsistent with this opinion.