**Gaston MAGRINAT, M.D., Plaintiff and Appellee,**

v.

**TRINITY HOSPITAL, a/k/a Trinity Medical Center, Defendant and Appellant.**

**Civ. No. 950266**

Supreme Court of North Dakota.

Dec. 4, 1995.

Richard H. McGee II, of McGee, Hankla, Backes & Wheeler, Ltd., Minot, for plaintiff and appellee. Appearance by Jon W. Backes.

Daniel S. Kuntz, of Zuger Kirmis & Smith, Bismarck, for defendant and appellant.

LEVINE, Justice.

Trinity Hospital (Trinity) appeals from a judgment enjoining Trinity from suspending Dr. Gaston Magrinat's privileges to practice medicine at the hospital pending completion of Trinity's investigation of alleged misconduct by Magrinat. We hold the trial court abused its discretion in granting injunctive relief, because the interim suspension was reasonably authorized by Trinity's bylaws, and we reverse the judgment.

The suspension occurred following an incident on June 17, 1995. At about 10:00 p.m. that night, a fifty-six year old man arrived at the hospital complaining of chest pains. A coronary angiogram indicated the patient had partial blockage in several coronary blood vessels and was suffering a heart attack. The patient's doctor, Dr. Philip Pero-

na, requested a consultation with Dr. Magrinat, a cardiologist, who arrived at the hospital around midnight. Both doctors agreed coronary bypass heart surgery was ultimately the best medical treatment for the patient, but that conducting an immediate balloon angioplasty procedure to relieve the patient's symptoms was warranted.

Trinity policy requires a surgical backup team for balloon angioplasty unless it is performed as an emergency procedure. No backup team was available, and Dr. Magrinat, who is qualified to perform the procedure, determined an emergency angioplasty was warranted. For reasons not fully explained in this record, the patient's family signed consent documents for the angioplasty procedure requiring the backup surgery team instead of the emergency procedure without surgical backup. When Dr. Magrinat attempted to obtain the necessary equipment to perform the procedure, a hospital lab technician refused to unlock the cabinet which contained the supplies, because the signed consent documents did not authorize the emergency angioplasty without surgical backup. Magrinat acknowledges he "became very upset." Staff members alleged that Dr. Magrinat then, in anger, grabbed a telephone receiver from a technician, "striking her in the eye or the face," bruising her face in the process. He also allegedly told the patient who was suffering the heart attack that "they are going to kill you," and "they are going to let you die," referring to the hospital employees. The patient responded by telling Magrinat he was fired and requesting another cardiologist.

By letter, dated June 23, 1995, Trinity's Chief of Staff, Dr. Michael T. Vandall advised Magrinat he was being summarily suspended for fourteen days because of the incident and that the Executive Committee of the hospital would conduct an investigation to determine the necessity of further discipline or corrective action. Dr. Vandall sent Magrinat a second letter, dated June 28, 1995, advising him the Executive Committee had met and decided an interim suspension of Magrinat's practice privileges "is in the best interests of patient care at Trinity Hospital by preventing potential harm to patients." The letter advised Magrinat the interim suspension would continue "in full force and effect pending the results of a full investigation of your conduct at Trinity Hospital and the final effectiveness of recommendations, if any, regarding further disciplinary or corrective action with respect to you in accordance with the Medical Staff Bylaws of the Medical Staff of Trinity Hospital."

Dr. Magrinat filed a complaint in district court seeking injunctive relief, under Section 32–05–04(1), N.D.C.C., enjoining Trinity from suspending his practice privileges during the investigation. The trial court initially issued a temporary restraining order against Trinity and, following a hearing, entered an order for judgment and final judgment granting Dr. Magrinat the injunctive relief requested. Trinity appealed from the judgment.

■■■ Although neither party has raised the issue of appealability, we may consider that issue upon our own motion. *Fargo Women's Health v. Lambs of Christ,* 488 N.W.2d 401 (N.D.1992). Ordinarily, a temporary injunction before trial is not reviewable by an interlocutory appeal. *Sargent County Bank v. Wentworth,* 434 N.W.2d 562 (N.D. 1989). A final judgment, or the equivalent under Rule 54(b), N.D.R.Civ.P., is necessary for appealability. *Barth v. Schmidt,* 472 N.W.2d 473 (N.D.1991). The only relief requested by Dr. Magrinat in his complaint was a temporary injunction to enjoin Trinity from suspending his practice privileges during the Executive Committee's investigation. The trial court granted Magrinat the relief he sought and entered judgment. No matter remains pending in the district court, and the judgment was intended to be final, disposing of all issues raised. We conclude the judgment is appealable, the notice of appeal was timely, and this appeal is properly before us.

Dr. Magrinat requested injunctive relief under Section 32–05–04(1), N.D.C.C.:

> *"When final injunction granted.*—Except when otherwise provided by this chapter, a final injunction may be granted to prevent the breach of an obligation existing in favor of the applicant:
>
>> "1. When pecuniary compensation would not afford adequate relief...."

In support of his request, Dr. Magrinat informed the court that if his interim suspension exceeded thirty days, federal law would require Trinity to report Magrinat's suspension to the national practitioner data bank.[1] That information is available to the public, including potential employers, and Dr. Magrinat asserted the placement of his name in the data bank could, therefore, cause harm to his professional reputation which could not adequately be compensated by monetary damages. Trinity responded that monetary damages would be an adequate remedy for someone whose name is found to have been wrongfully placed in the data bank. Trinity also responded that if the investigation were to clear Dr. Magrinat of any wrongdoing, these results would also be reported to the federal data bank and, thereby, eliminate the possibility of irrevocable harm to Dr. Magrinat. The trial court agreed with Dr. Magrinat that the suspension, which was likely to exceed thirty days pending the investigation, could result in irrevocable harm to his professional reputation, and the court granted the injunctive relief enjoining the interim suspension of Dr. Magrinat's practice privileges.

■ Section 32–05–04(1), N.D.C.C., authorizes an injunction to prevent the breach of an obligation when damages are insufficient to afford adequate relief. *Farm Credit Bank of St. Paul v. Brakke,* 483 N.W.2d 167 (N.D. 1992). Granting or denying injunctive relief, which is equitable in nature, rests within the sound discretion of the trial court, and the court's ruling will not be reversed on appeal unless there has been an abuse of discretion. *State v. Jensen,* 331 N.W.2d 42 (N.D.1983). Trinity asserts the trial court abused its discretion in granting injunctive relief to Dr. Magrinat. We agree.

■ The physicians and surgeons practicing at Trinity are organized as the Medical Staff of Trinity Hospital, and in that capacity they have adopted written bylaws.[2] Under Article 13.2(a) of those bylaws, the Chief of Staff is authorized to summarily suspend a practitioner's privileges, without prior hearing, for up to fourteen days, "when there are clear and convincing indications that there is a danger to the interests of patient care and that such danger is due to the practices or activities of the practitioner in question." Under Article 13.2(b) of the bylaws, the Executive Committee is authorized to impose "an interim suspension" of the physician's clinical privileges during an investigation of the physician's conduct, if it is "reasonably found to be in the best interests of patient care by preventing potential harm to patients." Article 14 of the bylaws grants various procedural rights including notice, right to hearing, and appeal rights. Dr. Magrinat has not alleged any violation by Trinity of his procedural rights under the bylaws.

Prior to imposing the interim suspension of Dr. Magrinat's privileges, the Executive Committee found that the suspension was in the best interests of patient care at the hospital to prevent potential harm to patients. In making that determination, the Executive Committee had information before it that Dr. Magrinat acted out of anger in an inappropriate and abusive manner during the June 17, 1995 incident. The Executive Committee also had information from which it could have concluded Dr. Magrinat caused some physical injury to a female staff employee when he brusquely grabbed a telephone receiver she was using and that he caused substantial emotional upset and potential physical endangerment to the heart attack patient when he angrily exclaimed the hospital was going to let the patient die or cause him to die because the angioplasty procedure was being delayed. It does not require a medical expert to understand that those types of statements, if made to a patient in cardiac distress, are entirely inappropriate and impose a substantial threat of potential harm to the patient.

■ The trial court made its decision after considering the four factors used to

---

1. This data bank was established through Title IV of Public Law 99–660, the Health Care Quality Improvement Act of 1986.

2. The applicability of the bylaws to this matter has not been challenged by either party.

determine whether a court should issue a preliminary injunction pending a final decision by the court on the merits of the case. Those factors are: (1) substantial probability of succeeding on the merits; (2) irreparable injury; (3) harm to other interested parties; and (4) effect on the public interest. *See, e.g., F–M Asphalt, Inc. v. North Dakota State Hwy. Dept.,* 384 N.W.2d 663 (N.D. 1986). However, application of those factors here is inappropriate, because they apply to preliminary injunctive relief under Section 32–06–02, N.D.C.C., but Dr. Magrinat requested *final* injunctive relief under Section 32–05–04, N.D.C.C. Relief under Section 32–06–02, N.D.C.C., is to preserve the status quo during the court process of rendering a final decision on the merits. *See, e.g., Vorachek v. Citizens State Bank of Lankin,* 461 N.W.2d 580 (N.D.1990). However, the issue for the court when a party requests final injunctive relief under Section 32–05–04, N.D.C.C., is whether the injunctive relief is necessary "to prevent the breach of an obligation existing in favor of the applicant." Dr. Magrinat could not demonstrate the need to prevent such a breach, because Trinity clearly had the right to impose the interim suspension under its bylaws, which have not been attacked by Dr. Magrinat as being unreasonable.

▮ Hospitals have a duty to the public to provide competent physicians and, for that purpose, to make proper investigation of complaints about a physician. *See Soentgen v. Quain & Ramstad Clinic, P.C.,* 467 N.W.2d 73 (N.D.1991). A prehearing suspension of a doctor's privileges to practice, though drastic and harsh, nonetheless, is appropriate when patient safety requires it and the bylaws provide adequate standards for summary suspension and a post-suspension hearing process. *See Everett v. Franciscan Sisters Healthcare, Inc.,* 882 F.2d 1383, 1387 (8th Cir.1989).

The Alaska Supreme Court's analysis in *McMillan v. Anchorage Community Hospital,* 646 P.2d 857, 865–866 (Alaska 1982), is sound and persuasive:

"Where a physician's competence has been called into question, the risk to patient safety is obvious and immediate. In such situations, courts have uniformly held that the hospital's interest outweighs the physician's, and that summary suspension is justified.

"Where the physician is simply charged with disruptiveness or an inability to work with others, the risk to patients is not so obvious or immediate. But if it appears that a physician's conduct is of a type which poses a realistic or recognizable threat to patient care, then immediate removal or summary suspension of the physician's hospital privileges would be justified. The fact that the physician's conduct has not yet produced any harm to a patient may be relevant in ascertaining whether his actions pose any such threat. But this is not an absolute prerequisite to the summary suspension of the physician's hospital privileges. A hospital is not required to wait until the physician's conduct has resulted in harm to a patient before summary action may be taken.

"In light of these considerations, we hold that when suspension of a physician's staff privileges is based on a charge of disruptiveness or inability to work with others, and there is no related charge concerning medical competence, summary suspension of the privileges is justified only where there is evidence that a physician's conduct poses a realistic or recognizable threat to patient care which would require immediate action by the hospital."

The Alaska court concluded the hospital board had wrongfully imposed a summary suspension of the doctor's privileges, under the circumstances, because there was no showing that the doctor's inability to get along with other staff members had adversely affected patient care. The facts here are clearly distinguishable. Trinity's Executive Committee had information from which it could conclude Dr. Magrinat's conduct did endanger a patient's health. The Executive Committee's conclusion is entitled to deference and should not be second-guessed by the courts. *Everett v. Franciscan Sisters*

*Healthcare, Inc.,* 882 F.2d at 1386 ("questions regarding medical treatment ... and kindred matters, are not suitable for determination by juristic science"); *see also Straube v. Emanuel Lutheran Charity Board,* 287 Or. 375, 600 P.2d 381, 386 (1979), *cert. denied,* 445 U.S. 966, 100 S.Ct. 1657, 64 L.Ed.2d 242 (1980).

The trial court's concern about the potential harm to Dr. Magrinat's professional reputation, because Trinity is required to report the interim suspension to the federal data bank, is well intended, but misplaced. Trinity followed its bylaws, which authorized an interim suspension of Dr. Magrinat's privileges during the investigation, upon the Executive Committee finding it necessary to prevent potential harm to patients. That finding was made by the Executive Committee, and we conclude the trial court abused its discretion when it effectively nullified that finding by enjoining the suspension. The court's injunction wrongly interfered with the hospital's right under the bylaws to suspend Dr. Magrinat's privileges during the investigation to prevent potential harm to hospital patients.

In accordance with this opinion, the judgment is reversed and the injunction is vacated.

NEUMANN, MESCHKE, JJ., RONALD L. HILDEN, District Judge, and SANDSTROM, Acting C.J., concur.

RONALD L. HILDEN, District Judge, sitting in place of VANDE WALLE, C.J., disqualified.