212 N.J. Super. 83 (1986)
514 A.2d 53
GIZELLA ZONERAICH, M.D., PLAINTIFF-APPELLANT,
v.
OVERLOOK HOSPITAL, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 17, 1986.
Decided July 21, 1986.
*85 Before Judges PETRELLA, COHEN and SKILLMAN.
Robert Goldsmith argued the cause for appellant (Wiley, Malehorn & Sirota, attorneys; Robert Goldsmith of counsel, Scott M. Rosenfeld and Robert Goldsmith on the brief).
William B. McGuire argued the cause for respondent The Board of Trustees of Overlook Hospital (Tompkins, McGuire & Wachenfeld, attorneys).
*86 Frederic K. Becker argued the cause for respondent Dr. Jerome A. Cantor (Wilentz, Goldman & Spitzer, attorneys).
Lance A. Posner argued the cause for respondents Drs. Arthur Perell and Robert Staub (Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone, attorneys).
Robert P. McDonough argued the cause for respondent Overlook Hospital (McDonough, Murray & Korn, attorneys).
The opinion of the court was delivered by COHEN, J.A.D.
Plaintiff Gizella Zoneraich is a physician. This appeal is the culmination of almost a decade of controversy, including numerous hospital hearings and four law suits,[1] concerning her membership and privileges on the medical staff of Overlook Hospital, and concerning the liability of Overlook, its trustees and certain other physicians for damages. The Chancery Division found defendants' handling of matters involving plaintiff's medical staff membership to be lawful. It also granted defendants' motion for summary judgment dismissing plaintiff's antitrust and tort damage claims. Plaintiff appealed, and we now affirm.
Plaintiff is a 1960 graduate of the Medical College, Bucharest, Rumania. She came to the United States in 1964 and worked at various hospitals in New York. From 1968 to 1971, she did a residency in obstetrics and gynecology (ob-gyn). She was licensed in New York in 1971 and New Jersey in 1973. In 1974, she received a provisional appointment to the medical staff of Overlook Hospital with limited supervised privileges in ob-gyn.
*87 In 1975, plaintiff was given unsupervised privileges for minor gynecological procedures but was continued under supervision for major procedures. In 1976, she requested advancement to full privileges. The ob-gyn department initially recommended approval, as did the Medical Staff Executive Committee (MSEC). Defendant Jerome A. Cantor, president of the medical staff, then reviewed plaintiff's file and expressed reservations about her application based on criticisms he said he found of plaintiff's professional performance. The Joint Advisory Committee, which had medical staff and trustee representation, was next to pass on such matters. It tabled plaintiff's application. The MSEC then asked for further investigation by the ob-gyn department, the pathology department and an ad-hoc committee. The ob-gyn department and the ad-hoc committee were for continuation of supervision. The MSEC recommended to the Board of Trustees that supervision continue for a maximum of one year. The Joint Advisory Committee concurred and suggested additional monitoring and counselling. The Board of Trustees adopted the two recommendations.
Plaintiff asked for a hearing on the Board decision. It was denied, because not provided for in the hospital by-laws. She then filed her first Chancery Division complaint, demanding an injunction against denial of full privileges and seeking compensatory and punitive damages from the hospital; defendant Robert Heinlein, its president; defendant Robert Staub, chair of the ob-gyn department, and defendant Cantor. She charged that she was denied her right to a hearing and that defendants' actions were arbitrary and capricious, interfered with her occupation and damaged her, personally and professionally.[2] The Chancery Division declined to order that plaintiff be given full privileges, but ordered that she be given a hearing on the matter by the hospital.
*88 Hearings were held in January 1978 before the Medical Staff Review Committee (MSRC), which recommended withholding full privileges and continuing supervision. In February, the Board of Trustees so determined.
In March, the MSEC recommended that plaintiff's membership on the medical staff be terminated. Plaintiff was advised of the recommendation and met with the MSEC in May. In June, plaintiff was told that the Joint Advisory Committee would also recommend termination, and she sought and was granted a hearing before the MSRC.
After a number of hearing sessions, plaintiff filed a second Chancery Division complaint in September 1978.[3] In it, she complained that improper ex parte communications had taken place between MSRC members, MSRC's medical advisors and witnesses before it. She demanded an order granting her full staff privileges, an injunction against continued hearings, an independent hearing officer, an order for discovery, a declaration that the hearings were maliciously commenced and conducted, and finally, compensatory damages. The Chancery Division ordered the on-going hearings terminated and resumed after a complete replacement of members of the MSRC.
The hearings resumed. The MSRC ultimately adopted factual findings, and concluded with a recommendation that plaintiff's medical staff membership should be terminated. In July 1979, the Board of Trustees adopted the recommendation and terminated plaintiff.
Plaintiff filed her third Chancery Division complaint, also in July 1979. It rehearsed the history of the matter in 65 paragraphs. It charged individual defendants with intentionally frustrating plaintiff's application for full privileges and engineering the continuation of limitations and ultimately the termination of her staff membership. The complaint alleged wrong-doing from 1977 on, and encompassed all of the internal hospital *89 proceedings and their alleged wrongful use by defendants. It sought an injunction against denial of full privileges, an injunction against defendants' monopolization of ob-gyn services, and compensatory and punitive damages for defendants' tortious interference with plaintiff's exercise of her profession, slander and defamation, defendants' arbitrary, unreasonable and capricious actions, deprivation of plaintiff's rights to procedural and substantive due process, and conspiracy.
In 1980, all of the complaints were consolidated. The court also ruled on the threshold issue whether it should proceed by reviewing the record of the hospital proceedings or by way of de novo hearings. Relying on Garrow v. Elizabeth Gen. Hospital and Dispensary, 79 N.J. 549 (1979), it determined to proceed on the record exclusively.
In late 1982, the Chancery Division upheld the decision of the Board of Trustees terminating plaintiff as a medical staff member. In 1984, it granted defendants' motion for summary judgment on all of the remaining claims.
We will not attempt to summarize the evidence presented at the various hearings held by hospital committees and considered by the Board of Trustees. The evidence was voluminous and its presentation was protracted. Much of it had to do with defects asserted to have been found in plaintiff's professional performance in a number of cases. It dealt with hospital events over a number of years. As to each event, the evidence typically included divergent testimony over what had occurred and expert testimony either criticizing or justifying plaintiff's performance. Some of the evidence had to do with allegations that plaintiff took unkindly to criticism and uncooperatively to supervision. Plaintiff denied those allegations. There were explorations of colleagues' motivations for their charges against plaintiff and for their hospital behavior relating to her. There were frequent procedural disagreements at the hearings. From the very beginning, plaintiff was represented by counsel in her presentations before hospital bodies. On two occasions, *90 when plaintiff believed she was not being afforded due process, she had access to the Chancery Division, which intervened at her instance, at one time to order a hearing and, at another, to order a hearing stopped and resumed before a committee with new members and advisors.[4]

I.
Judicial review of hospital decisions regarding admission to medical staff, extent of privileges and termination is very limited. Hospital officials are vested with wide managerial discretion, to be used to elevate hospital standards and to better medical care. Greisman v. Newcomb Hospital, 40 N.J. 389, 403 (1963). A hospital's primary purpose is to serve the public. So long as hospital decisions concerning medical staff are reasonable, are consistent with the public interest, and further the health care mission of the hospital, the courts will not interfere. Desai v. St. Barnabas Medical Center, 103 N.J. 79 (1986); Belmar v. Cipolla, 96 N.J. 199, 208 (1984).
A non-profit hospital, even though not governmental, is hardly private. It exists to furnish vital health care; its funds come in good part from public and charitable sources; its activities are closely regulated. Hospital boards manage quasi-public trusts, and have a fiduciary relationship with the public. Berman v. Valley Hospital, 103 N.J. 100 (1986); Doe v. Bridgeton Hosp. Ass'n., Inc., 71 N.J. 478 (1976), cert. den. 433 U.S. 914, 97 S.Ct. 2987, 53 L.Ed.2d 1100 (1977).
In Guerrero v. Burlington County Mem. Hospital, 70 N.J. 344 (1976), the Supreme Court of New Jersey drew heavily upon the administrative agency model to construct a framework for judicial review of hospital decisions. It articulated the need to accommodate the economic interests and procedural rights of *91 the physicians, the expertise of hospital authorities and the desirability of permitting them to exercise their reasonable management judgment in the public interest, and the need for judicial alertness to strike down action that is unreasonable, discriminatory or unfair. The Court concluded that initial reliance should be placed on internal hospital tribunals and remedies to strike the needed balances, and that judicial participation should arise only on a limited basis.
Although state action is not involved and constitutional due process requirements do not apply, Garrow v. Elizabeth General Hospital and Dispensary, 79 N.J. 549, 563-564 (1979); See Mendez v. Belton, 739 F.2d 15(1 Cir.1984); Loh-Seng Yo v. Cibola General Hospital, 706 F.2d 306 (10 Cir.1983), a physician is entitled to fundamentally fair procedures in a non-profit hospital's consideration of staff membership, the extent of privileges and termination.[5] Notice must be given of charges or proposed hospital action before hearing. Guerrero, supra, 70 N.J. at 359. A qualified right to counsel exists, and a right to disclosure, limited by recognition of competing rights to privilege and confidentiality. Garrow, supra, 79 N.J. at 566-568. The tribunal must be fair and unbiased.
Judicial review of hospital board action
should properly focus on the reasonableness of the action taken in relation to the several interests of the public, the [physician], and the hospital. The proper standard upon review is not identical with that customarily applied to administrative agencies, that is, substantial competent credible evidence. See Weston v. State, 60 N.J. 36, 51 (1972). This is not warranted nor possible in view of the nature of the hearing. However, the record should contain sufficient reliable evidence, even though of a hearsay nature, to justify the result. [Garrow, supra, 79 N.J. at 565].
Here, the Chancery Division properly determined that the Garrow standard contemplates a hearing before the Board, or a *92 committee thereof, Garrow, 79 N.J. at 568, the record of which is to be judicially reviewed to ascertain if there was sufficient reliable evidence, even though hearsay, to justify the result.
In a detailed review of the evidence, the Chancery Division concluded that the Garrow standard was met. Plaintiff quarrels with the conclusion that there was sufficient reliable evidence. Our review of the record convinces us that the Chancery Division was entirely correct on that point. The hospital tribunals had conflicting evidence before them and made reasonable choices, supported by sufficient reliable evidence. Plaintiff also quarrels with the Court's application of the Garrow standard to non-medical factual questions to which hospital expertise does not apply. We disagree. The Garrow standard is a relatively undemanding one not only as an expression of deference to hospital expertise, but also as a reflection of judicial reluctance to interfere in hospital management in the absence of the clear need to do so. Plaintiff argues that the Board and the hospital committees were biased against her, were interested in the outcome of the matter, and were adversely affected by her pending law suits. We see nothing in plaintiff's charges but suspicion and conjecture.
Plaintiff also complains that the Chancery Division approached fact questions material to her claim of procedural unfairness according to the Garrow standard. That is not so. The Chancery Division reviewed plaintiff's claims that she had insufficient timely notice of charges before the reconstituted MSRC, that she was improperly denied discovery, that the Board of Trustees was biased against her, that an independent hearing officer should have been appointed, and that the MSRC and the Board failed to consider all of the evidence before them. The court considered those claims on the basis of sound legal authority and the mostly undisputed factual background. It did not base procedural rulings on factfindings of the hospital bodies because there was sufficient reliable evidence for them. We affirm those rulings for the reasons stated by Judge Kentz in his October 15, 1982 letter opinion.

*93 II.
Plaintiff argues that summary judgment should not have been granted dismissing her tort and state anti-trust claims. Plaintiff's conspiracy, malicious interference and New Jersey Antitrust Act claims[6] all had a common thread: each cause of action had the essential element of malice, improper purpose or lack of justification for defendants' actions. See Rainier's Dairies v. Raritan Valley Farms, Inc., 19 N.J. 552, 563 (1955); Leslie Blau Co. v. Alfieri, 157 N.J. Super. 173, 185 (App.Div. 1978); Pontius v. Children's Hospital, 552 F. Supp. 1352 (W.D. Pa. 1982). Cf. Desai v. St. Barnabas Medical Center, 103 N.J. 79 (1986) which may independently bar plaintiff's antitrust claims.
We hold that the judicial affirmation of the reasonableness and propriety of the hospital's actions toward plaintiff establishes the justifiability and lawfulness of defendants' actions, determines an essential part of each of plaintiff's conspiracy, malicious interference and antitrust claims against her,[7] and therefore collaterally estops plaintiff from relitigating those matters.
A party is precluded by collateral estoppel from relitigating matters or facts which the party actually litigated and which were determined in a prior action, involving a different claim or cause of action, and which were directly in issue between the parties. Mazzilli v. Accident & Casualty Ins. Co., 26 N.J. 307, 314-316 (1958); see State v. Gonzalez, 75 N.J. 181, 186-187 (1977). Adjudicative determinations by administrative tribunals are entitled to preclusive effect if rendered in proceedings meriting that deference. See Restatement, Judgments 2d, § 83 (1982); United States v. Utah Construction & Mining *94 Co., 384 U.S. 394, 419-422, 86 S.Ct. 1545, 1558-1560, 16 L.Ed.2d 642 (1966); Hackensack v. Winner, 162 N.J. Super. 1, 24-25 (App.Div. 1978), modified and aff'd., 82 N.J. 1 (1980). It is no objection that the administrative decision was subjected only to a lenient standard of review. See Kremer v. Chemical Construction Corp., 456 U.S. 461, 481-482, 102 S.Ct. 1883, 1897-1898, 72 L.Ed.2d 262, reh'g den. 458 U.S. 1133, 103 S.Ct. 20, 73 L.Ed.2d 1405 (1982); Davis v. United States Steel Supply Corp., 688 F.2d 166 (3 Cir.1982), cert. den. 460 U.S. 1014, 103 S.Ct. 1256, 75 L.Ed.2d 484 (1983).
Five exceptions to the general rule of preclusion are stated in Restatement Judgments 2d, § 28 (1982). None of them has application to this case. The first exception is the case where the party to be precluded could not, as a matter of law, obtain review of the first decision. Here, review was available and took place. The second is the case where the issue is one of law and (1) the claims in the two actions are unrelated or (2) there has been an intervening change in the legal context or a potential inequity exists. Here, the issue of justification is in large part factual and there is no change in the law or any inequity involved in its application. The third exception is the case where a new determination is warranted by differences in the quality or extensiveness of the procedures in the two tribunals or by differences in their jurisdiction. Here, exhaustive formal hearings took place in the hospital with extensive participation by attorneys and two interventions by the Chancery Division. The results were subjected to and satisfied appropriate judicial review. There were lesser opportunities for discovery in the hospital hearings, but the differences demonstrated in this case were minor and did not affect the quality of the proceedings, and therefore should not deprive them of preclusive effect.
The fourth exception concerns cases where there are consequential differences between the proceedings in burden of going forward or of persuasion. Such is not the situation here. The final exception is for cases where the public interest *95 militates against preclusive effect, or where it was not sufficiently foreseeable in the first proceeding that the issue to be precluded would arise in the second, or where an adversary's conduct or other special circumstances deprived the party to be precluded of the opportunity or incentive to obtain a full and fair adjudication in the first action. None of those considerations bear on the present case.
Plaintiff argues, however, that granting preclusive effect would make defendants the judges of their own cause. Even if administrative determinations, judicially reviewed according to a lenient standard, generally merit preclusive effect, plaintiff contends it is not inevitably so where the administrative tribunal has a self-protective interest in the outcome. Plaintiff also raises the question whether hospital trustees and the in-house witnesses and experts who populate these hearings are sufficiently insulated from one another to assure that Board decisions will not be influenced by matters outside of the reviewable record.
These are difficult questions. We believe, however, that the New Jersey Supreme Court has already implicitly answered them. In Guerrero and Garrow, the Court decided to entrust hospital committees and boards of trustees with the quasi-judicial hearing of disputes over admission, privileges and termination of medical staff. The Court made reasonable requirements as to notice, counsel, and other matters assuring fundamentally fair procedures. But, in the final analysis, the Court's decision was that it could entrust these sensitive matters to the familiarity, independence, expertise, good faith and good judgment of the hospital committees and boards.
It was not an inevitable choice. There are arguments for designation of independent hearing officers. See Christhilf v. Annapolis Emerg. Hosp. Ass'n., 496 F.2d 174, 181 (4 Cir.1974); Applebaum v. Bd. of Dirs., Barton Mem. Hosp., 104 Cal. App.3d 648, 163 Cal. Rptr. 831, 837-838 (1980). Contested cases before New Jersey's administrative agencies are routinely *96 transferred to the Office of Administrative Law for hearing by trained and independent hearing officers. There are other arguments which can be made for the proven fairness of plenary judicial hearings. The Supreme Court's choice to rely on hospital tribunals implies confidence in their capacity to effectively, independently and fairly perform the difficult adjudicative functions assigned to them. The lenient standard of review established for judicial review also implies confidence in the in-house remedies.
Consistency with the Supreme Court's reliance on hospital tribunals to perform quasi-judicial duties leads us to accord preclusive effect to the determinations they make which are necessary to resolve the disputes before them, and which are made in good faith, after fundamentally fair proceedings, and upon sufficient reliable evidence.
Gareeb v. Weinstein, 161 N.J. Super. 1 (App.Div. 1978), is not to the contrary. There, a physician brought an action for damages against members of a hospital committee who voted to suspend him from the medical staff. The trial court granted summary judgment dismissing the complaint. One of the grounds for judgment was collateral estoppel arising out of a prior judgment. That judgment upheld the decision of the Board of Trustees denying plaintiff readmission to the staff after his appointment expired during the suspension ordered by the defendants. The judgment did not review the validity of the suspension.
The Appellate Division reversed the summary judgment. First, it stated that the judgment affirming the board action did not in any way determine the truth or falsity of plaintiff's present charges, having to do with the propriety of the preceding suspension. The court then went on to say that, even if issues involved in the new charges were actually decided in the prior judgment, collateral estoppel would be inappropriate. It concluded that plaintiff did not have a full and fair opportunity to litigate those issues before defendants' committee. It mentioned *97 these factors: that the hospital committee hearing was only reviewed for substantial credible evidence and lack of arbitrariness; that plaintiff, who had trouble effectively communicating in English, was not permitted to have counsel before the committee; that plaintiff had no right of discovery, and that the witnesses were not sworn. Plainly, the deficiencies in the hospital hearing were sufficient to move this court to deny preclusive effect. The added factor of the lenient standard of judicial review would not have provided an independently sufficient basis for the same result. Since Gareeb turned on differences in litigated facts and issues and on deficiencies in the hospital proceedings, it is not inconsistent with our decision today to give preclusive effect to results reached reasonably in proper hospital proceedings.
Determinations of hospital committees and boards have been given preclusive effect by other jurisdictions in cases like this one. In Bricker v. Crane, 118 N.H. 249, 387 A.2d 321 (1978), defendants were hospital staff and members of a hospital committee which had failed to reappoint plaintiff to the medical staff. He first sued for reinstatement, charging that defendants' decision was improper, that plaintiff was deprived of due process rights, and that the action was a response to his testifying in medical malpractice cases. The trial court conducted a two-day hearing and affirmed the hospital action, holding that it was not arbitrary, unreasonable or capricious. The judgment was affirmed on appeal. In a second action,[8] plaintiff sued for damages for conspiracy to interfere with his contract and relations with the hospital. The second action was held precluded because the issue of justification, which was determined adversely to plaintiff in the first case, necessarily defeated part of plaintiff's cause of action in the second.
*98 In Pontius v. Children's Hospital, 552 F. Supp. 1352 (W.D. Pa. 1982), a hospital decision in a staff termination case was held to preclude a subsequent action charging an unreasonable restraint of trade in violation of the federal antitrust laws. The court ruled:
We do not believe, however, that the Sherman Act created the requirement of a de novo determination of medical staff privilege decisions by either a judge or a jury. If a hospital decides, following a hearing which meets the requirements of due process, to terminate a physician's staff privilege for reasons valid under the antitrust laws, and those reasons are supported by substantial evidence, no factual question remains as to section 1 claims  the "restraint" is a reasonable one. [552 F. Supp. at 1372].
In Westlake Community Hospital v. Superior Court of L.A. County, 17 Cal.3d 465, 131 Cal. Rptr. 90, 551 P.2d 410 (1976), the California Supreme Court dealt with similar issues. There, plaintiff had been terminated from the staff of one hospital and denied admission to the staff of another. He sued both for damages, charging tortious conduct. The court ruled that a physician could not bring such an action for damages without first exhausting effective internal hospital remedies, and without bringing a suit to set aside an adverse hospital action and succeeding in overturning that action.[9]Garrow also discussed the concept of exhaustion of in-house hospital remedies before resort to judicial proceedings. 79 N.J. at 558-563. Its focus was on the inadvisability of interlocutory judicial intervention in ongoing hospital proceedings. It did, however, plainly recognize the general applicability of the doctrine of exhaustion of administrative remedies to hospital proceedings.
The Westlake court also analogized the damage action to a malicious prosecution action, in which the plaintiff must first prevail in the action alleged to have been maliciously prosecuted. See Penwag Property Co., Inc. v. Landau, 148 N.J. Super. 493, 500 (App.Div. 1977), aff'd 76 N.J. 595 (1978). The court saw that the analogy was not a perfect one but reasoned:

*99 As in a malicious prosecution action, plaintiff's position rests on a contention that defendants intentionally and maliciously misused a quasi-judicial procedure in order to injure her; such a claim is necessarily premised on an assertion that the hospital's decision to revoke plaintiff's privileges was itself erroneous and unjustified. Although a quasi-judicial decision reached by a tribunal of a private association may not be entitled to exactly the same measure of respect as a similar decision of a duly constituted public agency [citation omitted], we believe that so long as such a quasi-judicial decision is not set aside though appropriate review procedures the decision has the effect of establishing the propriety of the hospital's action. [citation omitted]. Accordingly, we conclude that plaintiff must first succeed in overturning the quasi-judicial action before pursuing her tort claim against defendants. [131 Cal. Rptr. at 101, 551 P.2d at 421].
Straube v. Larson, 73 Or. App. 501, 699 P.2d 206 (Or. App. Ct.), pet'n for review denied, 299 Or. 583, 704 P.2d 513 (1985), applied Westlake's preclusion rule to damage claims against hospital personnel to the extent that issues of their conduct were necessarily determined by court approval of the hospital's actions.
The present case involves primarily a Board of Trustees decision terminating plaintiff's staff privileges which was found by the Chancery Division and now this court to have been a reasonable decision supported by sufficient reliable evidence. Judicial review of the Board of Trustees decision included review of underlying MSRC proceedings and individual defendants' roles in them. The Board itself extensively reviewed earlier committee proceedings and individual defendants' roles in them. Our affirmance determines the justifiability of all of those hospital events preceding and including plaintiff's termination. In these circumstances, preclusive effect should be given the results reached reasonably in proper hospital proceedings, thus barring plaintiff from now employing the courts to gain other redress.
Granting preclusive effect to proper in-house hospital determinations has the beneficial effect of avoiding the endless and exhausting litigation over hospital privileges exemplified by this *100 case, Bricker v. Crane, supra, and Straub v. Larson, supra.[10] It furthers the policies announced by Guerrero, Garrow and Belmar v. Cipolla of encouraging reasonable exercise of expertise and good judgment in hospital management with a minimum of judicial intervention. It encourages public-spirited citizens to serve their communities by participating in the work of non-profit hospitals with less fear of embroilment in law-suits. It facilitates decisive dealing with professional shortcomings in the hospital with less concern for reprisal, a concern the Legislature expressed in enacting N.J.S.A. 2A:84A-22.10, which protects members of evaluation, peer review and similar hospital committees from liability for their good faith actions. Finally, it assures consistency between the outcomes of judicially-affirmed hospital administrative proceedings and of the accompanying claims for damages.
The disadvantages of granting preclusive effect are not so clear. Principally, they focus on the fear that biased witnesses and hearing bodies will not be revealed without more intense judicial scrutiny. We are confident that the courts can now react effectively to that fear in their review of hospital proceedings.[11] We do not believe it necessary or desirable to react by creating the opportunity for repetitive hearings over the same *101 facts and issues before successive tribunals of similar capacity for doing justice.

III.
The Chancery Division properly granted judgment dismissing plaintiff's defamation claim. The sole reference to the claim in plaintiff's pleadings is in a single portmanteau paragraph in the 65 paragraph one-count complaint filed after her termination in July 1979. The paragraph charges:
61. The defendants have tortiously interfered with plaintiff in the exercise of her profession and they have slandered and defamed her and wilfully, unlawfully and maliciously exposed her to public ridicule.
No other part of the complaint alleges when, where, by which defendants and by what words, written or oral, plaintiff was defamed. A plenitude of written and oral communications are attributed by the complaint to various defendants, and most are labelled false. Plaintiff cannot sensibly be read to charge, however, that everything defendants said and wrote about plaintiff over the years was defamatory, and that all defendants together uttered or published it all.
A complaint must contain a statement of the facts on which the claim is based, showing that plaintiff is entitled to relief. R. 4:5-2. It must state the essential elements of a cause of action simply, concisely and directly. Grobart v. Society for Establishing Useful Mfrs., 2 N.J. 136, 150-152 (1949). In the case of a complaint charging defamation, plaintiff must plead facts sufficient to identify the defamatory words, their utterer and the fact of their publication. A vague conclusory allegation is not enough. Kotok Building v. Charvine Co., 183 N.J. Super. 101, 105 (Law Div. 1981); see National Bowl-O-Mat. v. Brunswick Corp., 264 F. Supp. 221 (D.N.J. 1967).
The need to plead a cause of action for defamation is not avoided by telling defendants to seek a more definite statement or discovery. A plaintiff may be permitted to bolster *102 a defamation cause of action through discovery, but not to file a conclusory complaint to find out if one exists. Such a complaint must be dismissed.[12]
Affirmed.
NOTES
[1] Three of the lawsuits are involved in this appeal. The fourth, brought and dismissed in Essex county, was the subject of a separate appeal which we have decided today in another opinion. Zoneraich v. Staub, et als., A-669-84T6.
[2] By subsequent amendment to her complaint, plaintiff added a count charging violations of the New Jersey and federal anti-trust statutes.
[3] The complaint was later amended in immaterial particulars.
[4] As to the advisability of judicial intervention to correct alleged deficiencies in ongoing hospital proceedings, see Garrow v. Elizabeth Gen. Hospital and Dispensary, 79 N.J. 549, 560-563 (1979).
[5] We do not determine whether in this context the requirement of fundamentally fair procedures is less rigorous than the Fourteenth Amendment's due process clause. See Applebaum v. Bd. of Dirs., Barton Mem. Hosp., 104 Cal. App.3d 648, 163 Cal. Rptr. 831 (1980).
[6] The federal antitrust claims were early dismissed for want of subject matter jurisdiction, a decision not challenged on appeal.
[7] Discussion of her defamation claims will be saved for part III of this opinion.
[8] Cf. Falcone v. Middlesex County Medical Society, 47 N.J. 92 (1966), holding that the single controversy rule bars such a second action.
[9] To the contrary, see Qasem v. Kozarek, 716 F.2d 1172 (7 Cir.1983).
[10] Dr. Bricker's lawsuits resulted in six reported decisions in the state and federal courts. See 387 A.2d at 322. Dr. Straube's litigation, twelve years after the controversy first arose, was called "interminable" by one of the appellate courts involved in it. 699 P.2d at 212.
[11] Ordinarily, the record will be sufficient basis for judicial review. There may, however, be cognizable challenges to hospital decisions which cannot be resolved on the record of the in-house proceedings. Such would be the case where a full and fair opportunity to litigate the issue was denied, where new matters arise after the decision was made, or where a well-founded challenge is made to the bona fides of the hearing tribunal itself which requires independent fact finding for proper resolution. It is not the function of this opinion to determine what issues are to be raised in the hospital and what issues may be saved for court. For this case, it is enough to say that the total proceedings gave plaintiff a full and fair opportunity to litigate every matter she legitimately raised.
[12] We need not consider defendants' claims of privilege arising out of the purpose of the transactions involving them with plaintiff. Cf. Hackethal v. Weissbein, 24 Cal.3d 55, 154 Cal. Rptr. 423, 592 P.2d 1175 (1979).