291 N.J. Super. 462 (1995)
677 A.2d 811
ALLYN HERNANDEZ, PLAINTIFF,
v.
OVERLOOK HOSPITAL, DEFENDANT.
Superior Court of New Jersey, Chancery Division Union County General Equity Part.
Decided May 17, 1995.
*465 Christopher Carey for plaintiff (Tompkins, McGuire & Wachenfeld, attorneys).
James Patterson for defendant (Carpenter, Bennett & Morrissey, attorneys).
KENTZ, J.S.C. (retired and temporarily assigned on recall).
Plaintiff, Allyn Hernandez (hereinafter plaintiff or Hernandez), a former second year resident at defendant, Overlook Hospital (hereinafter defendant or Overlook) comes before this court by way of an order to show cause seeking a preliminary injunction enjoining Overlook from depriving Hernandez of the right to have counsel present and participate at a hearing regarding plaintiff's termination from Overlook's residency program.[1] In addition, plaintiff seeks an order from this court permitting a certified shorthand reporter to transcribe the proceedings at plaintiff's expense and an order allowing plaintiff and her counsel to inspect and copy all documents relevant to plaintiff's termination including relevant patient files, prior to the hearing.
The following facts are undisputed. Hernandez, a medical school graduate of the Universidad Central Del Caribe, was a second year resident in the Internal Medicine Residency Program *466 (hereinafter Program) at Overlook, a non-profit private hospital, located in Summit, New Jersey. The Program, accredited by the Accreditation Council for Graduate Medical Education, consists of three years of training under the supervision of the Director of the Program, Michael Bernstein (hereinafter Program Director), Associate Directors, the Chief Resident, Kathleen Galantro (hereinafter Chief Resident) and various attending physicians on the staff of Overlook.
On or about December 6, 1993, plaintiff, as a second year resident, entered into a written contract with Overlook for appointment to the "House Staff" of Overlook for a one year term running from July 1, 1994 through June 30, 1995. Pursuant to the contract, Hernandez, a "House Officer" was entitled to a $35,000 stipend, four weeks vacation, and professional liability and life insurance. "House Officer" is merely another title for a resident. The contract also entitled Hernandez to remain for the full term of the contract provided her services were satisfactory to the Program Director and to Overlook. However, the agreement expressly provided that Overlook may terminate a House Officer's appointment "for just and sufficient academic cause upon the recommendation of the Program Director and the Chairman of the Department." The contract further stated that the remedy for a terminated resident was the Employee Appeals Procedure as outlined in the House Staff Manual.
A report prepared by the Chief Resident indicated that Hernandez as a second year resident supervised first year interns. The report further indicated that it was the Chief Resident's opinion that plaintiff lacked the clinical judgment necessary for a second year resident, failed to offer adequate leadership or guidance to her interns and had difficulty with professionalism and decorum when dealing with other staff members. In this report, the Chief Resident also addressed in detail various incidents where plaintiff improperly treated or diagnosed patients.
Effective October 28, 1994, Hernandez was terminated from her position as House Officer at Overlook. Subsequently, pursuant to *467 the House Staff Manual, Hernandez invoked her right to a hearing regarding the decision to terminate her on the ground the decision was arbitrary and capricious. By letter dated January 5, 1995, Overlook notified plaintiff that an Appeal Board hearing had been scheduled for January 24, 1995, but that plaintiff was not entitled to have counsel present at the hearing. The following reason for the exclusion of counsel at this hearing was given:
The Appeals' procedure is intended to provide a medical review by experienced physicians of a Program Director's academic judgment. It is not a legal proceeding and, therefore, no attorney (either for the hospital or the resident) will be permitted to participate or attend the meeting with the Appeal Board.
In the letter Overlook also advised Hernandez that only she, and not counsel, could review certain relevant documents and patient files at least five days prior to the Appeal Board hearing. Subsequently, in a letter dated January 19, 1995, Overlook in an effort to avoid legal proceedings and to settle the dispute amicably agreed to permit plaintiff's counsel to attend the Appeal Board hearing in order to provide advice to Hernandez and to make a brief opening and closing statement. However, Overlook refused to allow plaintiff's counsel to present evidence and likewise refused to permit a shorthand reporter to transcribe the proceedings. The letter further provided that plaintiff's counsel could review relevant documents, with the exception of patient records. Finally, the letter stated that Overlook's offer was withdrawn if plaintiff sought an order to show cause.
By letter dated January 20, 1995, Hernandez rejected Overlook's offer contained in its January 19, 1995 letter by insisting on having counsel present evidence at the hearing with a shorthand reporter recording the hearing. In addition, Hernandez asserted in the letter that because her termination was based upon the handling of certain patients as set forth in the report prepared by the Chief Resident, it was necessary that Hernandez and her counsel be given the opportunity to review these patient records to adequately prepare for the defense of the charges against her. Finally, the letter provided that Hernandez and her counsel would *468 have no objection to entering into a confidentiality agreement in light of Overlook's privacy concerns.
In the proceeding now before this court the plaintiff raises issues of first impression, namely whether fundamental fairness requires that a resident be entitled to have counsel participate at a hospital hearing regarding the resident's termination from a private hospital's residency program and have a right to discovery of relevant documents including patient files, prior to the hearing.
However, before addressing these novel issues, this court must decide as a threshold matter whether plaintiff must exhaust administrative remedies prior to seeking interlocutory judicial intervention thereby rendering judicial review at this stage premature. In general, a plaintiff cannot pursue judicial review if she or he has failed to exhaust all available administrative remedies. Campione v. Adamar of N.J., Inc., 274 N.J. Super. 63, 72, 643 A.2d 42 (Law Div. 1993). The doctrine of exhaustion of administrative remedies serves the following goals:
(1) the rule ensures that claims will be heard, as a preliminary matter, by a body possessing expertise in the area; (2) administrative exhaustion allows the parties to create a factual record necessary for meaningful appellate review; and (3) the agency decision may satisfy the parties and thus obviate resort to the courts. (citations omitted).
[City of Atlantic City v. Laezza, 80 N.J. 255, 265, 403 A.2d 465 (1979).]
The doctrine requires that parties pursue available proceedings to their appropriate conclusion and await their final outcome before seeking judicial intervention. Garrow v. Elizabeth General Hospital and Dispensary, 79 N.J. 549, 559, 401 A.2d 533 (1979). The exhaustion of remedies doctrine may be applied to proceedings of non-governmental bodies based on private agreements or documents. Id. at 560-561, 401 A.2d 533. Moreover, the rules applicable to judicial intervention in proceedings before administrative agencies and the reasons underpinning such rules are as a matter of principle equally applicable to a hearing before a hospital board regarding the qualifications of medical staff members. Id. at 558, 401 A.2d 533.
*469 The doctrine of exhaustion of administrative remedies is neither a jurisdictional nor an absolute requirement. Merry Heart Nurs. & Conv. Home v. Dougherty, 131 N.J. Super. 412, 417, 330 A.2d 370 (App.Div. 1974). Exceptions to the doctrine of exhaustion of administrative remedies will lie when only a question of law need be resolved, when administrative remedies would be futile, when irreparable harm would result, when jurisdiction of the agency is doubtful, or when an overriding public interest calls for a prompt judicial decision. N.J. Civil Service Ass'n v. State, 88 N.J. 605, 613, 443 A.2d 1070 (1982); Garrow, supra, 79 N.J. at 561, 401 A.2d 533.
The only issues before the court at this time are whether Hernandez is entitled to counsel and has the right of discovery in connection with the hospital termination proceeding. Whether Hernandez was wrongfully terminated from Overlook is not presently an issue before this court. Therefore, the exhaustion of administrative remedies is not required because now the only issues before the court are solely questions of law. Furthermore, the public interest existent here calls for a speedy resolution of these issues so that the hearing can take place promptly and consequently, Hernandez can either be reinstated to Overlook's residency program, appeal the hospital's decision or seek admission to another residency program. See Rolleri v. Lordi, 146 N.J. Super. 297, 302, 369 A.2d 952 (App.Div. 1977); Taureck v. Jersey City, 149 N.J.Super. 503, 509, 374 A.2d 70 (Law.Div. 1977). Therefore, I will proceed to address the issues raised in this proceeding.
Upon reviewing New Jersey case law on the subject, it appears that while our courts have addressed a physician's right to have counsel present and to have discovery of relevant information in connection with a hospital hearing regarding denial of staff appointment or termination of staff privileges, our courts have not addressed the issue as to the rights of a resident at a hospital termination hearing.
*470 Our Supreme Court in Garrow addressed the right of a physician to have counsel present and to have discovery as to relevant data with respect to a hearing concerning a non-profit private hospital's denial of a physician's staff appointment. See Garrow, supra, 79 N.J. at 564-568, 401 A.2d 533. It found that although fundamental constitutional due process could not be invoked where the action of a hospital denying the physician's application for staff membership did not reflect state action, fundamental fairness dictated that applicants who are denied staff appointments be apprised of the specific charges made by a non-profit private hospital and that they be afforded an opportunity to appear and present witnesses and material in support of their positions. Id. at 563-564, 401 A.2d 533. In disagreeing with the Appellate Division's prior ruling in Sussman v. Overlook Hospital Ass'n, 95 N.J. Super. 418, 231 A.2d 389 (App.Div. 1967) that the right to counsel at a hospital hearing was not essential, the Court reasoned that "in view of the physician's substantial interest in proceedings of this nature, on balance ... the physician should have the right to have counsel present at mandated hospital hearings with respect to his application for admission to the staff." Id. at 566, 401 A.2d 533. Thus, the attorney will have the opportunity to advise the physician at the hearing, present evidence on his behalf, meet and explain adverse data and present argument to the board. Ibid. In addition, the relevant and material data upon which the hospital board relied upon in arriving at its conclusions should be made available to the physician at his expense prior to the hearing so as to enable him to prepare adequately to the charges against him. Id. at 567, 401 A.2d 533.
Subsequently, the Appellate Division in Zoneraich v. Overlook Hospital, 212 N.J. Super. 83, 514 A.2d 53 (App.Div. 1986) revisited Garrow and stated:
[A] physician is entitled to fundamentally fair procedures in a non-profit hospital's consideration of staff membership, the extent of privileges and termination. Notice must be given of charges or proposed hospital action before the hearing Guerrero [v. Burlington County Memorial Hosp.], supra, 70 N.J. [344] at 359 [360 A.2d 334 (1976)]. A qualified right to counsel exists, and a right to disclosure, limited by *471 recognition of competing rights to privilege and confidentiality. Garrow, supra, 79 N.J. at 566-568 [401 A.2d 533].
[212 N.J. Super. at 91, 514 A.2d 53.]
Plaintiff relies upon Garrow and Zoneraich in support of her request for counsel's participation at the hospital hearing and for discovery. However, Garrow and Zoneraich are distinguishable because they involve a physician's hospital staff appointment and staff termination and not a resident in a residency program.
The record reveals that a resident is a physician who is receiving postgraduate training in a medical specialty. The focus of a residency program is to assist the resident in developing clinical skills and professional competence.[2] Residents cannot be admitted to the hospital medical staff until they complete the residency program and obtain a license from the State of New Jersey. Residents participating in the Internal Medicine Residency Program at Overlook are expected after completion of the three year Program to take the board examinations administered by the American Board of Internal Medicine in order to become board certified. Residents participate in a residency program subject to certain restrictions. For example, in New Jersey residents cannot admit patients or sign off on patient charts, nor can they write prescriptions in an out patient setting without the signature of a licensed physician. On the other hand, a medical staff physician treats his patients at the hospital, has full authority to prescribe patient's treatment and is subject to no supervision during the course of treatment. Marmion v. Mercy Hospital and Medical Center, 145 Cal. App.3d 72, 193 Cal. Rptr. 225, 233 (1983).
There appear to be two schools of thought on the issue of a resident's right to counsel and discovery at a hospital termination hearing as expressed in decisions of out of state courts. Some courts have denied a resident terminated from a program the right to a hearing and the right to counsel where the dismissal was *472 for academic reasons. In such a case the dismissal of a resident from a private hospital's residency program is the same as failing a graduate student for inability to meet academic requirements. Ross v. University of Minnesota, 439 N.W.2d 28, 33 (Minn.App. 1989); Samper v. University of Rochester Strong Memorial Hospital, 139 Misc.2d 580, 528 N.Y.S.2d 958 (Sup.Ct. 1987), aff'd as modified, 144 A.D.2d 940, 535 N.Y.S.2d. 281 (4th Dept. 1988), appeal dismissed 74 N.Y.2d 642, 541 N.Y.S.2d 983, 539 N.E.2d 1111 (1989). In denying a resident procedural rights, these courts reason that academic judgements are reserved to academic institutions and educators and not to judges or juries. Ross, supra, 439 N.W.2d at 33; Samper, supra, 528 N.Y.S.2d. at 962. On the other hand, where a resident's termination is for disciplinary reasons as opposed to academic reasons, the resident is entitled to notice of the charges, an explanation of the evidence and an opportunity to present his or her side of the story. Easaw v. St. Barnabas Hosp., 142 Misc.2d 480, 537 N.Y.S.2d 944, 948, 950 (Sup.Ct. 1989).
However, other courts recognizing the important interest of a resident pursuing a medical specialty do not make a distinction between an academic dismissal and disciplinary dismissal and have found that fundamental fairness requires that a resident terminated from a residency program for any reason be afforded certain rights at a hospital hearing concerning the resident's termination. For example, in Stretten v. Wadsworth Veterans Hospital, 537 F.2d 361, 368 (9th Cir.1976), which involved the dismissal of a resident, the court found that a resident's interests are to maintain his income, to complete the residency phase of his medical education and to protect his professional reputation. The court held:
The resident's interest is important enough that he should have notice of his deficiencies, should have an opportunity to examine the evidence against him, and should be allowed to present his side of the story to the decision-maker. These procedures will insure that all relevant data are before the decision maker and will allow the terminated resident and any reviewing court to judge whether the decision-maker acted in bad faith or arbitrarily or capriciously.
[Stretten, supra, 537 F.2d at 369].
Likewise, in Ezekial v. Winkley, 20 Cal.3d 267, 142 Cal. Rptr. 418, 423, 425, 572 P.2d 32, 37, 39 (1977), the California Supreme *473 Court held that a hospital must afford a resident in termination proceedings the common law right of fair procedure, which requires at least adequate notice of the charges and a meaningful opportunity to respond prior to dismissal. In so finding, the court reasoned that the hospital by terminating plaintiff from its surgical residency program would "thwart the enjoyment of the economic and professional benefits flowing" from the plaintiff's expectation of achieving certification as a surgeon. Id. at 423, 572 P.2d at 37.
Subsequently, in Mercy Hospital and Medical Center, supra., 193 Cal. Rptr. at 235-236, the court in reaffirming the holding in Ezekial that a resident should be given adequate notice of termination and opportunity to respond, reasoned that a resident has significant interest in the continuation of his income, specialized training and education as well as in the preservation of his professional and personal reputation.
Although the California courts in Ezekial and Marmion and the federal court in Stretten address the right of a terminated resident to respond to the charges filed against the resident at an internal hospital hearing, they do not elaborate on whether fundamental fairness requires that the terminated resident has the right to have counsel participate at a hospital hearing.
This court opines that the distinction of a discharged resident as a student or employee or the resident's dismissal for academic or disciplinary reasons are distinctions without a difference. Rather, in following the California jurisdiction's and Stretten's line of thought and given the breadth of protection afforded by our courts in Garrow and Zoneraich to physicians being denied staff privileges, fundamental fairness requires that a resident terminated from a private hospital's residency program has the right to have counsel attend and introduce evidence at a hospital hearing concerning the resident's termination. In coming to this conclusion, this court deems the effect of a resident's termination from a residency program to be substantially similar to that of a physician being terminated from hospital staff. In both cases the *474 resident as well as the physician have tarnished records affecting their professional reputations. Such a termination would indeed adversely impact on the likelihood of that resident being accepted into another residency program. This result would prejudice the resident's right to become licensed, board certified and practice in his or her area of specialty. See Ezekial v. Winkley, supra, 142 Cal. Rptr. at 423, 572 P.2d at 37. Similarly, the prejudicial information on the physician's record may result in his or her denial of medical staff appointment at other hospitals. Having found that the effect and stigma of a resident being terminated from a residency program is substantially the same as a physician being terminated from hospital staff, it follows that a resident should be granted the same fundamental fairness at a hospital hearing as is afforded a physician in a termination proceeding.
Overlook argues that if plaintiff is permitted to turn the Appeal Board hearing into a full-blown trial involving legal procedures such as discovery, cross-examination and the calling of witnesses, the hearing would become complicated, time-consuming, legalistic and would discourage candid input and evaluations from attending physicians and senior residents of the resident's performance. I find that such prejudice, if any, to Overlook would be slight when balanced with the prejudice that may be caused the plaintiff if a hearing was conducted without fundamental fairness as required by Garrow. However, it should be noted that the parameters of the Appeal Board hearing shall be determined by Overlook and should comport with the rulings herein set forth and with the general requirement that the proceeding be in accordance with fundamental fairness. See Garrow, supra, 79 N.J. at 566-567, 401 A.2d 533. Moreover, Overlook can preserve its need for a candid evaluation of plaintiff by her peers by identifying the facts or substance of the evaluation without disclosing the source. See Garrow, supra, 79 N.J. at 567-568, 401 A.2d 533.
As in Garrow and Zoneraich, the hospital board should make available to Hernandez at her expense relevant data that it relied on in making its termination decision prior to the hearing so that *475 she can intelligently respond to the charges. However, an issue exists whether discovery of relevant data should include patient files. The hospital argues that it has a strong interest in keeping patient files confidential and that therefore they are not subject to discovery by a terminated resident prior to the hearing, even though they may be the basis for the resident's termination. Although the Appellate Division in Zoneraich recognized that disclosure of relevant data is limited by competing rights of privilege and confidentiality, it did not go on to define whether patient records are excluded on these grounds. Zoneraich, supra, 212 N.J. Super. at 91, 514 A.2d 53.
The physician-patient privilege was not recognized at common law but rather was enacted by statute in New Jersey in 1968. State v. Dyal, 97 N.J. 229, 235-236, 478 A.2d 390 (1984). N.J.S.A. 2A:84A-22.2 protects confidential communications between a patient and physician reasonably believed to be necessary or helpful to enable the physician to make a diagnosis of or to treat the patient. The purpose of the privilege is to encourage patients to disclose facts necessary for diagnosis and treatment without fearing the consequences of unauthorized disclosure to the public. State v. Dyal, supra, 97 N.J. at 237, 478 A.2d 390. In New Jersey, the courts have construed the privilege narrowly reasoning:
The inevitable effect of allowing the privilege, nonetheless, is the withholding of evidence, often of the most reliable and probative kind, from the trier of fact. To the extent that the privilege is honored, it may therefore undermine the search for truth in the administration of justice. McCormick, supra, § 105, at 226; 8 Wigmore, supra, § 2380a, at 830. Because the privilege precludes the admission of relevant evidence, it is restrictively construed. State v. Soney, supra, 177 N.J. Super. [47] at 58 [424 A.2d 1182 (App.Div. 1980)]; State in the interest of M.P.C., 165 N.J. Super. 131, 136 [397 A.2d 1092] (App.Div. 1979).
[State v. Dyal, supra, 97 N.J. at 237-238, 478 A.2d 390.]
In Hague v. Williams, 37 N.J. 328, 336, 181 A.2d 345 (1962), a case decided before the statutory enactment of the physician-patient privilege, our Supreme Court recognized that the physician-patient privileged is not absolute but rather is subject to certain limitations:

*476 This is not to say that the patient enjoys an absolute right, but rather that he possesses a limited right against such disclosure, subject to exceptions promoted by the supervening interest of society. We conclude, therefore, that ordinarily a physician receives information relating to a patient's health in a confidential capacity and should not disclose such information without the patient's consent, except where the public interest or the private interest of the patient so demands. Without delineating the precise outer contours of the exceptions, it may generally be said that disclosure may, under such compelling circumstances, be made to a person with a legitimate interest in the patient's health.
[Id. at 336, 181 A.2d 345.]
In Todd v. South Jersey Hospital System, 152 F.R.D. 676, 679 (D.N.J. 1993), plaintiff patient brought a medical malpractice action against an obstetrician for his unexplained absence during her child's birth and also sought to hold the hospital liable on the ground that its administration was negligent in allowing the obstetrician to retain his OB/GYN privileges despite his poor attendance record. Plaintiff filed a motion to compel production of various documents including Peer Review records regarding other patients the obstetrician performed caesareans on. Ibid. In determining whether non-party patients files were discoverable by plaintiff, the district court applied New Jersey state law. Id. at 681, 684-685. The district court recognizing that the physician-patient privilege was not absolute but rather must be subrogated to more important societal interests, held that the peer review documents could be disclosed if proper protections were in place to guard the identities of the non-party patients. Id. at 684-685. In so holding the court said:
The privacy interests protected by the doctor-patient privilege are adequately maintained when proper safeguards are used to otherwise protect the patient's privacy, such as the redaction of personal identifying information from medical records. For example, when the information is necessary and cannot be gathered from other sources, removal of otherwise confidential information from the records sought in the discovery protects the non-party patients and justifies disclosure. Wei [v. Bodner], 127 F.R.D. [91] at 97 [(D.N.J. 1989)].
[Id. at 684.]
The court stated that the redacted information shall include the patient's name, address, social security number, health insurance number and medical record number. Id. at 685, n. 6.
*477 Likewise, in Osterman v. Ehrenworth, 106 N.J. Super. 515, 526, 256 A.2d 123 (Law Div. 1969), the court held that the physician-patient privilege did not preclude a physician in a medical malpractice action from answering interrogatories seeking disclosure of the names and addresses and treatment provided to certain non-party patients provided that the names and addresses of such patients are deleted.
Here, notwithstanding the physician-patient privilege, fundamental fairness requires that Hernandez and her attorney be allowed to examine and copy all relevant data, including the patient records prior to the hearing so that Hernandez can properly respond to the charges against her. If plaintiff and her attorney were unable to inspect the patient records that are the basis for her termination, then plaintiff's right to have a hearing concerning termination and to have counsel present evidence on her behalf would be meaningless. At the same time, this court recognizes the privacy interests of the other non-party patients. It is clear that in this case it is not the names and addresses of the patients that are important but rather the data contained in their records which may be a ground for terminating Hernandez. Therefore, to insure that these interests are not compromised, I will order the hospital to provide Hernandez and her attorney for inspection and copying all patient records that are the basis of Hernandez's termination with the names, addresses, social security numbers if any, and other identifying information of the patients redacted from the records or files. Without such identifying information, the patients' interest in confidentiality will be preserved.
Finally, Garrow and Zoneraich did not address whether a shorthand reporter should be permitted to record the internal hospital proceeding. In light of the fact that plaintiff is willing to assume the expense of a shorthand reporter, this court finds that there is no harm in allowing the hearing to be so recorded. In fact, the recording of the hearing will allow a clear record to be established which would enable a reviewing court to better determine *478 whether the hospital acted reasonably or in an arbitrary manner in terminating the resident.
Counsel for plaintiff shall submit an order in accordance herewith within 10 days.
NOTES
[1] Although plaintiff in her order to show cause seeks injunctive relief, the court does not feel that this is an appropriate remedy here and therefore will not address plaintiff's entitlement to such relief.
[2] The Essentials of Accredited Residencies in Graduate Medical Education, Accreditation Council for Graduate Medical Education ("ACGME"), Preface, 1994-1995.