NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2118
_____

MANUEL ROBLES;
SANTO L. CEDENO SALTOS; WALTER GUZMAN;
JORGE SARMIENTO; ALEXANDRA LASTRA;
OSCAR FLORES; FREDDY PADILLA; LUIS M. LLERENA

v.

UNITED STATES ENVIRONMENTAL UNIVERSAL SERVICES, INC.
a/k/a Alliance Environmental Systems, Inc.

Manuel Robles; Santo L. Cedeno Saltos;
Walter Guzman; Jorge Sarmiento;
Alexandra Lastra,
Appellants

_____

On Appeal from the United States District Court
for the District of New Jersey
D.C. Civil Action No.2-09-cv-02377
(Honorable Susan D. Wigenton)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 5, 2012

Before: SCIRICA, AMBRO and VAN ANTWERPEN, *Circuit Judges*.

(Filed: March 13, 2012 )

_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

Plaintiffs Manuel Robles, Santo Saltos, Walter Guzman, Jorge Sarmiento, and Alexandra Lastra appeal the grant of summary judgment on their claims against defendant Alliance Environmental Systems ("Alliance") for violation of the New Jersey Conscientious Employee Protection Act ("CEPA"), wrongful discharge, and defamation. We will affirm.

I.

Plaintiffs were employed by Alliance to remove asbestos at the Walson Hospital on Fort Dix, New Jersey, in 2008. Each completed and signed employment applications stating he or she would be an "at-will employee" subject to termination for any reason. All testified at depositions that they understood they could be terminated at any point.

Alliance paid plaintiffs $19.04 an hour, a rate established through a wage determination decision made by the federal Department of Labor ("DOL") under the Service Contract Act and incorporated into Alliance's subcontract. Several plaintiffs testified they were promised a wage of $40-45 an hour during their initial interview, which they believed was the federally mandated wage for asbestos removal. Robles stated from mid-February onward he complained about the pay to Jay Henderson, his supervisor, for himself and on behalf of the other plaintiffs. According to Robles's testimony, Henderson said "he was going to keep insisting and perhaps they would give [Robles] something," but by April nothing had changed. At that point, Robles stated he told Henderson he "was going to complain," to which Henderson "said fine, do what you want to do." Robles testified that in May or June he told Henderson he would contact

2

DOL.

Alliance terminated Guzman and Sarmiento on March 10, 2008, and Saltos on May 7, 2008, allegedly for stealing copper from the jobsite. All three filed complaints with DOL and the New Jersey Department of Labor and Workforce Development. Lastra was terminated on June 15, 2008, allegedly for insubordination. She testified that she had told Henderson a week earlier that she would call DOL to determine the proper rate of pay, "[s]o he said go ahead, call." When asked if she believed she was fired because of her statement to Henderson, she stated, "I imagine so. I mean I don't know. There was no reason for them to fire me."

On May 15, Robles also complained to DOL, which initiated an investigation. On August 15, DOL contacted Alliance to conduct an investigation of wage rates on the Fort Dix project. Robles testified he did not know if DOL had told Alliance that he had contacted it, although he claimed that a supervisor began to follow him around, leading him to believe that "perhaps someone told them I was behind this, behind this case." Alliance terminated Robles on August 27, 2008, allegedly for stealing copper from the project site.

Subsequently, DOL determined the workers on the Fort Dix project had been misclassified and were entitled to $40.59 an hour under the Davis-Bacon Act, 40 U.S.C. § 3141 *et seq*. DOL sequestered funds for back pay from the Army Corps of Engineers, which contracted for the project, and all plaintiffs received wage adjustments for the period they worked on the project, which resulted in payment at the rates plaintiffs expected when hired.

3

On April 22, 2009, plaintiffs filed suit in New Jersey state court, alleging their termination by Alliance violated the NJ CEPA, constituted wrongful discharge, and defamed them. Alliance removed the case to federal court, and the District Court granted summary judgment for Alliance on all counts. *Robles v. U.S. Envtl. Universal Servs., Inc.*, No. 09-2377, 2011 WL 1322397 (D.N.J. Mar. 31, 2011). Plaintiffs appealed.[1]

## II.[2]

### A.

The New Jersey CEPA, N.J. Stat. Ann. §34:19-1 *et seq.*, protects employees from retaliation by employers for reporting suspected violations of law or public policy. To establish a prima facie case under CEPA, a plaintiff must demonstrate that "(1) he reasonably believed that his employer's conduct was violating a law or rule or regulation promulgated pursuant to law, (2) he objected to the conduct, (3) an adverse employment action was taken against him, and (4) a causal connection exists between the whistleblowing activity and the adverse employment action." *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 404 (3d Cir. 2007) (citing *Dzwonar v. McDevitt*, 828 A.2d 893, 900 (N.J. 2003)).

---

[1] The District Court had jurisdiction over this diversity case under 28 U.S.C. § 1332. We exercise jurisdiction over this appeal under 28 U.S.C. § 1291.

[2] We review a grant of summary judgment *de novo*. *Doe v. Luzerne Cnty.*, 660 F.3d 169, 174 (3d Cir. 2011). Summary judgment is proper when the movant demonstrates there is no genuine dispute as to any material fact and is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). We consider all inferences in the light most favorable to the nonmovant, but "[t]he nonmoving party cannot establish a genuine dispute as to a material fact by pointing to unsupported allegations in the pleadings." *Luzerne Cnty.*, 660 F.3d at 174-75 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

Because CEPA requires employees to file suit within a year of an adverse employment action, N.J. Stat. Ann. § 34:19-5, the claims of Guzman, Sarmiento, and Lastra[3] are time-barred. The claims of Saltos and Robles fail because, although they likely satisfy the first three prongs of the CEPA standard, they have not established a factual dispute as to whether their termination occurred because of their protected activity. To demonstrate causation, a plaintiff must show that the "retaliatory discrimination was more likely than not a determinative factor in the decision." *Donofry v. Autotote Sys., Inc.*, 795 A.2d 260, 271 (N.J. Super. Ct. App. Div. 2001). Retaliation may be reasonably inferred from the circumstances surrounding the employment action, *Maimone v. City of Atlantic City*, 903 A.2d 1055, 1064 (N.J. 2006), including temporal proximity between the protected activity and the adverse action, *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir. 2000), and inconsistencies or contradictions in the employer's proffered legitimate reasons for its action, *id*. The plaintiff must also establish that the employer knew of the protected activity. *Mancuso v. City of Atlantic City*, 193 F. Supp. 2d 789, 810 (D.N.J. 2002).

Here, Saltos did not complain to DOL until after his termination, so his discharge could not have been retaliation for protected activity. Robles's termination, by contrast, occurred twelve days after DOL contacted Alliance to investigate his complaints. But other factors undercut any inference that the protected activity caused Robles's discharge. Robles has presented no evidence that his employers were upset over his threats to

---

[3] Lastra's claim is time-barred because she was not added as a plaintiff until July 21, 2010, over two years from her discharge.

contact DOL; according to his testimony, his supervisor, Henderson, even promised to try to get him additional money and did not discourage him from reporting the matter to DOL. Alliance had no incentive to oppose Robles's reports, since any shortfall in the wage schedule was the financial responsibility of the Army Corps of Engineers, and an increase in the cost of the project only increased the overhead and profit to which Alliance was contractually entitled. Moreover, Robles has presented no evidence that Alliance's claim he stole copper from the worksite was pretextual. Taken together, this evidence does not demonstrate a genuine issue of material fact as to whether Robles was discharged because of his protected activity. Accordingly, summary judgment on his CEPA claim was proper.

B.

Under New Jersey law, employment is considered at-will in the absence of "explicit, contractual terms" providing otherwise. *Bernard v. IMI Sys., Inc.*, 618 A.2d 338, 346 (N.J. 1993); *see also Witkowski v. Thomas J. Lipton, Inc.*, 643 A.2d 546, 552 (N.J. 1994). An at-will employee may be terminated "for any reason, be it good cause, no cause, or even morally-wrong cause, but not when the discharge is contrary to a clear mandate of public policy." *D'Agostino v. Johnson & Johnson, Inc.*, 628 A.2d 305, 311 (N.J. 1993) (discussing *Pierce v. Otho Pharm. Corp.*, 417 A.2d 505, 512 (N.J. 1980)).

Plaintiffs here signed an employment application unambiguously stating they were at-will employees. Their deposition testimony demonstrated they had no reasonable expectations otherwise. Accordingly, plaintiffs may only recover if their termination violated New Jersey public policy. Saltos and Robles have waived their wrongful

6

termination claims by filing CEPA claims. N.J. Stat. Ann. § 34:19-8; *Young v. Schering Corp.*, 660 A.2d 1153 (N.J. 1995). Guzman, Sarmiento, and Lastra may have done the same by initiating CEPA claims, even though those claims are time-barred. *See Young*, 660 A.2d at 1159-60 (concluding that the legislature intended that a "former employee forfeits his or her common-law retaliatory-discharge cause of action when he or she 'institutes' a CEPA cause of action."). But even if their common-law claims survive, plaintiffs must still demonstrate that the discharge occurred in retaliation for engaging in activity to further public policy. *Conoshetti v. Pub. Serv. Elec & Gas. Co.*, 364 F.3d 135, 148-49 (3d Cir. 2004). Here, plaintiffs have not established that their discharge was caused by protected activity: Guzman and Sarmiento contacted DOL only after their discharge, while Lastra has offered no evidence besides her assertion to suggest her discharge was retaliation for protected activity and not, as Alliance asserts, for insubordination. For these reasons, plaintiffs' wrongful-discharge claims must fail.

C.

Robles, Saltos, Guzman, and Sarmiento allege Alliance defamed them by accusing them of stealing materials from the worksite. To establish a defamation claim, a plaintiff must establish (1) the assertion of a false and defamatory statement concerning the plaintiff, (2) the unprivileged publication of that statement to a third party, (3) fault amounting to at least negligence by the publisher, and (4) damages. *DeAngelis v. Hill*, 847 A.2d 1261, 1267-68 (N.J. 2004) (citing Restatement (Second) of Torts § 558 (1965)). To survive a motion for summary judgment on a defamation claim, the plaintiff "must plead facts sufficient to identify the defamatory words, their utterer and the fact of their

7

publication. A vague conclusory allegation is not enough." *Zoneraich v. Overlook Hosp.*, 514 A.2d 53, 63 (N.J. Super. Ct. App. Div. 1986).

Here, the accusation of criminality is defamatory as a matter of law. *Romaine v. Kallinger*, 537 A.2d 284, 291 (N.J. 1988). Moreover, although plaintiffs testified that they were not harmed by Alliance's accusations of wrongdoing, an accusation of criminal conduct is slander per se for which damages are presumed. *McLaughlin v. Rosanio, Bailets & Talamo, Inc.*, 751 A.2d 1066, 1072 (N.J. Super. Ct. App. Div. 2000); *see also Jorgenson v. Pa. R.R. Co.*, 138 A.2d 24, 37-40 (N.J. 1958) (accusation of theft from employer is slander per se).[4] But plaintiffs have presented no evidence outside unsupported allegations in the pleadings that Alliance's statements were false. Nor have plaintiffs demonstrated the fact of unprivileged publication. Although Alliance communicated its allegation that Robles stole copper when he applied for unemployment benefits, statements made in unemployment proceedings enjoy qualified privilege under New Jersey law, *Rogozinski v. Airstream by Angell*, 377 A.2d 807, 817-18 (N.J. Super. Ct. Law Div. 1977), and so are actionable only if the plaintiff presents evidence of "a wrong or malicious motive," *Fees v. Trow*, 521 A.2d 824, 830 (N.J. 1987). Plaintiffs have not suggested a malicious motive, nor have they provided evidence of any other publication other than the bald assertion that Alliance officials must have communicated

---

[4] Although the New Jersey Supreme Court has limited slander per se strictly to the four existing categories and discussed eliminating it altogether, *Ward v. Zelikovsky*, 643 A.2d 972, 984-85 (N.J. 1994), leading one court to suggest that "slander per se is on its last legs in New Jersey, and may no longer be a viable jurisprudential basis for awarding damages when there is no demonstrable harm," *McLaughlin*, 751 A.2d at 1075, the New Jersey Supreme Court has not abolished the doctrine.

8

the allegations to other officials within the company. This assertion, with nothing more, does not raise a genuine issue of material fact, *Luzerne Cnty.*, 660 F.3d at 174-75, and so summary judgment on plaintiffs' defamation claims is proper.

## III.

For the foregoing reasons, we will affirm the District Court's grant of summary judgment to Alliance.